# Richmond.

## SUPERVISORS OF CUMBERLAND COUNTY v. RANDOLPH.

### February 2d, 1893.

1. PRACTICE AT LAW—*Mandamus.*—Allegations in petition for *mandamus* are not admitted as true by failure of the answer to traverse them.

2. CONSTITUTION—*County subscriptions—Bonds.*—The legislature may constitutionally authorize a county to subscribe to, the stock of a railroad company and issue bonds in payment, with or without the sanction of a popular vote.

3. COUPON BONDS—*Negotiable—Bona-fide holder.*—These bonds and coupons, payable to bearer, are negotiable instruments, and, when regular and unconditional, and on their face recite that they are issued in pursuance of a certain act, there is an implied representation that the conditions precedent have been complied with, and the *bona-fide* holder is not bound to look beyond this recital further than to see whether the necessary authority has been conferred by the act.

4. IDEM—*Levy—Mandamus.*—Presentation of these coupons by the holder thereof to the board of supervisors for allowance is not necessary, as they are obligations of the county, and the board of supervisors have no power to disallow them. Its duty is to levy a tax to pay them, and *mandamus* lies to compel it to make a levy for that purpose, whether or not a judgment has been had on the coupons.

5. IDEM—*Purchase at a discount.*—The rights of the holder of such coupons are not affected by the fact that he purchased them at a discount. *Cromwell* v. *County of Sac*, 96 U. S. 51.

Error to judgment of the county court of Cumberland county, rendered February 22, 1892, awarding a *mandamus* compelling the board of supervisors of that county to levy a tax to pay certain coupons, held by the petitioner, the defendant in error here, which coupons were detached from certain bonds issued by the county in payment of its subscription to the capital stock of the Farmville and Powhatan Railroad Company.

By an act of assembly, approved February 5, 1886, the counties of Cumberland and Powhatan were each authorized to subscribe forty thousand dollars of the stock of the company, provided that at a popular election, thereafter to be held, in the manner set forth in sections 62 and 63 of chapter 61 of the Code of 1873, the vote should be in favor of such subscription.     Acts 1885–'86, p. 65.

An election in the county of Cumberland was afterwards— to-wit, on the 7th of August, 1886—held, the result of which was certified to the county court as being in favor of the subscription; whereupon an order was entered requiring the supervisors to carry out the wishes of the voters in that regard, which was done—that is to say, forty thousand dollars of the stock of the company was subscribed for, to be paid in bonds of the county, conditioned as required by the above-mentioned act, and to bear interest at the rate of six *per centum per annum.*     The act provided that the principal of the bonds, if issued, should be made payable in thirty years, provided a railroad was built across the said counties, and completed before the 3d of March, 1890; otherwise to be void and of no effect.     Accordingly, forty bonds, for a thousand dollars each, were issued, in conformity with the act, payable to the railroad company, in payment of the said stock.

Afterwards, however—to-wit, on the 8th of February, 1888—another act was approved, which, after reciting that each of the said counties *had subscribed* forty thousand dollars to the stock of the company, and *had paid* for the same in conditional bonds, as authorized by the act of February 5, 1886, enacted as follows:

" That on the completion of the Farmville and Powhatan railroad, as proposed, across the counties of Cumberland and Powhatan, respectively, the said conditional bonds, issued by the said counties, respectively, shall, in the discretion of the respective boards of supervisors of said counties, be exchanged

for coupon bonds, stating that the sum due is for value received, aggregating an equal amount, with like conditions as to rate of interest and time and place of payment of principal and interest. On such exchange being made, there shall be delivered to such county certificates of stock of the Farmville and Powhatan Railroad Company for an amount equal to that of said coupon bonds delivered." Acts 1887–'88, p. 128.

Under this act eighty coupon bonds, for $500 each, were issued and delivered to the company, at its request, in lieu of the forty conditional bonds by the county of Cumberland, and for which certificates of stock were received, as provided by the act. A blank form of these bonds and coupons is as follows :

" UNITED STATES OF AMERICA,

$500.                                                                     $500.

County of Cumberland,

State of Virginia.

" For value received, the county of Cumberland, Virginia, promises to pay to bearer, or the registered holder hereof, if registered in accordance therewith, on the first day of September, nineteen hundred and seventeen; five hundred dollars, in lawful money of the United States of America, at the First National Bank, in the city of Richmond, Virginia, and interest thereon, at the rate of six *per centum per annum,* upon the presentation and surrender of the annexed coupons therefor, on the first day of September and March, in each year, in like money, at said First National Bank, in the city of Richmond, Virginia. This bond is one of the series of eighty, all of like tenor, date, and amount, issued by the obligor in pursuance of acts of assembly, approved, respectively, on the 5th day of February, 1886, and on the 8th day of February,

1888. This bond may be registered at the office of the treasurer of the county of Cumberland at the option of the holder, and thereafter the principal will be payable to said person only as shall from time to time appear to be the last registered holder.

" The registry of the bond shall not affect the negotiability of its coupons by delivery.

" In witness whereof, I, ———, chairman of the board of supervisors of Cumberland county, Virginia, acting for and on behalf of said county, in pursuance of the aforesaid acts of assembly and order of the board of supervisors of said county, made and entered on their records on the 11th day of April, 1890, have hereunto set my hand and affixed the seal of the board of supervisors, this — day of ——, 18—.

——————— ———————,
Chairman of the Board of Supervisors.

——————— ———————,
Clerk of the County of Cumberland, Va.

*Coupon.*

$15.                                                              $15.

" The county of Cumberland will pay to bearer, at the First National Bank, of Richmond, Virginia, fifteen dollars, for six months' interest due this first day of ———, ——, on its bond No. —, for five hundred dollars.

——————— ———————,
Chairman of the Board of Supervisors."

The petitioner is the holder of one hundred and fifty-four of these coupons; eighty of which fell due on the 1st of March, 1891, the residue on the 1st of the following September, and all of which are unpaid.

After their maturity he petitioned the board of supervisors of Cumberland county to levy a tax to pay them, which was

refused, and the claim disallowed; whereupon an appeal was taken to the county court, which appeal seems never to have been acted on. The petitioner soon afterwards filed his petition in the same court for a *mandamus* to compel the levy of a tax, to which the board demurred and also answered.

The defense set up in the answer was that the bonds were void, chiefly on the ground that no previous notice of the election held on the 7th of August, 1886, was given. It was also stated that the railroad had not been completed across the county of Cumberland, and that the appeal from the action of the board disallowing the petitioner's claim had not been disposed of. Another allegation of the answer was that the petitioner bought the coupons in question at a discount. No issue was taken on the answer, but the writ was awarded, as prayed for in the petition; and a writ of error to this judgment having been refused by the judge of the circuit court of Cumberland, the case, by a writ of error, was brought to this court.

*W. M. Flannagan, E. P. Buford,* and *R. R. Fauntleroy,* for plaintiffs in error.

*Pegram & Stringfellow* and *J. P. Fitzgerald,* for defendant in error.

LEWIS, P., (after stating the case,) delivered the opinion of the court.

The first point made by the appellants is that, upon the facts stated in the answer, which was not traversed, the writ ought to have been denied. But this is a mistaken view. At common law the return was not traversable, the party being left to his action for a false return. If in such action the return was falsified, a peremptory *mandamus* was granted.

Bac. Abr., tit. " Mandamus." The defects of this procedure were, to a certain extent, remedied by the statute, 9 Anne, ch. 20, which statute has not been re-enacted in Virginia. Section 3014 of the Code, however, provides that the answer shall be "subject to any just exceptions"; and here, it is true, there are none. But treating the answer as though it had been demurred to, the result by no means follows ·for which the appellants contend.

And, first, it is to be observed that the competency of the legislature to authorize counties or other municipalities to subscribe to the stock of a railroad company, and to issue bonds in payment of such subscriptions, is unquestionable. And this authority may be conferred with or without the sanction of a popular vote. The legislature possesses all legislative power not prohibited to it, and there is no constitutional restriction upon its powers in matters of this sort. The provision of the Constitution of Virginia that " the state shall not subscribe to, or become interested in, the stock of any company, association, or corporation," refers to subscriptions by the state, and not to a case like the present. *Redd* v. *Supervisors of Henry County*, 31 Gratt. 695 ; *Railroad Company* v. *County of Otoe*, 16 Wall. 667.

Legislative authority, moreover, as in the present case, to issue " coupon bonds," implies authority to issue bonds and coupons payable to bearer, which are negotiable instruments, having all the qualities and incidents of commercial paper. *Arents* v. *Commonwealth*, 18 Gratt. 750 ; *Gelpeke* v. *Dubuque*, 1 Wall. 175 ; *Thompson* v. *Lee County*, 3 Id. 327 ; *Livingston County* v. *Portsmouth Bank*, 128 U. S. 102 ; 1 Dill. Mun. Corp. (4th ed.), sec. 513.

It is also important to observe that the holder of such instruments is presumed to be a *bona-fide* holder for value before maturity, unless fraud or illegality in the inception of the paper be shown. 1 Danl. Neg. Instr., sections 812, 815 ;

*Smith* v. *Sac County*, 11 Wall. 139.   And the question, there-
fore, is, do the matters set up in the answer constitute a good
defense as against such a holder?

The main ground relied on is that the election held under
the act of February 5, 1886, was not legally held, for want
of notice.   But the bonds from which the coupons in
question were detached were not issued under that act, but
under the act of February 8, 1888.   And independently of
this consideration the objection is without merit.

The doctrine of the Supreme Court of the United States,
and the one most consonant with reason and justice, is that
where a municipal corporation has legislative authority to
issue negotiable securities, dependent only upon the adoption
of certain preliminary proceedings, such as a popular election,
the *bona-fide* holder has a right to assume that such prelimi-
nary proceedings have been regularly taken, if the fact be
certified on the face of the instruments, or on the face of the
bonds from which negotiable coupons are detached, by the
proper officers whose duty it is to ascertain it.   In such case
the recital is itself a decision of the fact by the appointed
tribunal, and estops the corporation, as against such holder,
to contest it.   The latter is not bound to ascertain the truth
or falsity of such recital, or to look further than to see whether
the requisite legislative authority has been conferred.

Accordingly, such instruments have often been held valid,
in the hands of a *bona-fide* holder, under circumstances which
would sustain a direct proceeding against the municipality to
annul them, or to prevent their issue.   *Commissioners of
Knox County* v. *Aspinwall*, 21 How. 539; *Supervisors* v.
*Schenck*, 5 Wall. 772; *St. Joseph Township* v. *Rogers*, 16 Id.
644; *County of Warren* v. *Marcy*, 97 U. S. 96; *Town of
Coloma* v. *Eaves*, 92 Id. 484; *Commissioners* v. *Bolles*, 94 Id.
104; 1 Dill. Mun. Corp. (4th ed.), sec. 549.

Indeed, this court, in *De Voss* v. *City of Richmond*, 18

Gratt. 338, went further, and applied the principle of estoppel in respect to a bond not negotiable. In that case the bond in question was issued by the city in lieu of a bond which had been previously confiscated by the late Confederate government.; but there was nothing on its face to indicate that fact, it being in form an unconditional promise to pay. It was conceded, moreover, that in re-issuing it in that form the city authorities disobeyed the mandate of an express ordinance in regard to re-issuing bonds in lieu of confiscated bonds, and exceeded their authority. But as, in the opinion of the court, its unconditional form was equivalent to a representation by the city that it could be purchased with safety, it was held that, as against a *bona-fide* holder for value, the city was estopped to deny its validity.

" From the nature of the business," said the court, " the city knew that this representation, conveyed by the form of the bond, would be relied on, and must have intended that it should be. When a party has relied upon it, and in good faith paid his money on the faith of it, it would be the heighth of injustice to allow the city to say that it is not true, and that it was his folly to believe it."

Besides, whatever ground of objection there might be if the case stood upon the act of February 5, 1886, alone, any irregularities which may have occurred in the proceedings under that act were cured by the act of February 8th, 1888. The latter act recognized the validity of the subscription that had been made, and all that had been done under the prior act, and in express terms authorized the issue of coupon bonds, on the completion of the railroad across the counties of Cumberland and Powhatan, in lieu of the conditional bonds which had already been issued to the railroad company under the prior act. This it was clearly competent for the legislature to do, both on principle and authority. As was remarked by Judge Burks, in *Redd* v. *Supervisors of Henry County*, 31

·Gratt. 695, " defective subscriptions may, in all cases, be ratified where the legislature could have originally conferred the power "—citing *Thompson* v. *Lee County*, 3 Wall. 327 ; *St. Joseph Township* v. *Rogers*, 16 Id. 644, and other cases.

In the present case the bonds from which the coupons in question were detached are payable to bearer, as are the ·coupons, and are regular and unconditional on their face. They; moreover, recite that they are issued in· pursuance of the statutes above mentioned.    This is an implied representation that the only condition precedent prescribed or contemplated by the act of February 8th, 1888—namely, the completion of the road across the said counties—had been ·complied with ; and the *bona-fide* holder, as already stated, was not bound to look beyond this recital, except to the act authorizing the bonds to be issued.

Nor is there any merit in the objection founded on the pendency of the appeal from the order of the board of supervisors rejecting the petitioner's claim on account of the coupons in question.    It was not necessary to present the claim for allowance to the board, for, to all intents and purposes, it was audited when the bonds were issued.    The coupons were binding obligations of the county, and the board had no power to disallow them.    Its duty in the matter was clear and purely ministerial—viz., to levy a tax to pay them, as section 1248 of the Code requires.    Its order, therefore, rejecting the claim, from which the appeal was unnecessarily taken, does not, in any degree, partake of the nature of a judgment.    A board of supervisors in Virginia has no judicial powers of any sort.    This was decided in *Board of Supervisors* v. *Catlett*, 86 Va. 158, and there are many like decisions by courts of other states.    Nor is there any doubt that *mandamus* lies to compel a levy to be made, although the coupons have not been reduced to judgment; for, had a judgment been obtained, the only proper remedy to enforce it would be by

*mandamus.    County of Green* v. *Daniel,* 102 U. S. 187;
*County Commissioners* v. *King,* 13 Fla. 451, 467.

Nor is the case affected by the allegation in the answer
that the petitioner purchased the coupons at a discount.    A
similar objection was overruled in *Cromwell* v. *County of
Sac,* 96 U. S. 51, in which case it was said that, as the sales of
such securities are usually made with reference to prices
current in the market, and not with reference to their par
value, it would lead to inconceivable confusion if *bona-fide*
purchasers in the market were restricted in their claims upon
such securities to the sums they had paid for them.

This sufficiently disposes of the case, and renders it un-
necessary to consider any other question discussed at the bar.

JUDGMENT AFFIRMED.