## Richmond.

Bell and Another for, &c., v. Farmville and Powhatan
Railroad Company and Another.

February 7, 1895.

1. Jurisdiction—*Removal of Causes—Consent.*—Parties to a suit may consent
   that the suit shall be docketed and heard in a court having general juris-
   diction of that class of cases, and such consent is a waiver of objection
   to the jurisdiction of the court.  Taking and agreeing to a continuance
   is evidence of having made one's self a party to the record, and is a
   recognition that the case is in that court, and it is too late afterwards to
   object to the jurisdiction of the court.
2. Removal of Causes—*Record—Papers—Presumption.*—When a case has
   been removed from one court to another, although the clerk of the
   former court has not made the copies of rules and orders required by
   section 3318 of the Code, yet, where it appears that the whole record
   was before the Circuit Court when it decided the case, this court will
   not presume that the case was heard and decided in the lower court in
   the absence of any of the papers in the case.
3. County Bonds—*Irregularities—Curative Act.*—The Legislature has power
   to authorize a county or other municipality to subscribe to the stock of
   a railroad company and to issue bonds for such subscription.  Although,
   by reason of mistake, carelessness, or other cause, a county has failed to
   comply with the conditions precedent to the exercise of a power con-
   ferred upon it by the Legislature to issue bonds, still the Legislature can
   cure all irregularities by subsequent legislation, and make such bonds as
   valid and binding as if all the conditions precedent had been strictly
   complied with.

Appeal from a decree of the Circuit Court of the city of
Petersburg, rendered on the 13th day of February, 1893, in
a suit in chancery, wherein the appellants were the complain-
ants, and the appellees were the defendants.

*Affirmed.*

The record certified to this court by the clerk of the Circuit Court of the city of Petersburg contains the following certificates of the clerk of that court:

"Be it remembered that heretofore, to-wit: in the clerk's office of the Circuit Court for the county of Powhatan on the 2nd day of January, 1891, came Wm. M. Flanagan and Robt. Bell, by counsel, and filed their bill of complaint in chancery against the Board of Supervisors of Powhatan county and the Farmville & Powhatan railroad company, which bill with all the exhibits therewith filed, and the order of injunction thereon endorsed, is as follows:"

Then follows a copy of the bill and exhibits.

"And at another day, to-wit: At rules held in the clerk's office of Powhatan Circuit Court, on the first Monday in February, 1891, the said bill was taken for confessed as to the defendant, the Board of Supervisors of Powhatan county; and thereupon came the defendant, the Powhatan Railroad Company, and filed its demurrer and answer, which with the exhibits therewith is as follows:"

The demurrer and answers are copied in the record, and afterwards sundry petitions, demurrers, and answers, and also "amended and supplemental bill No. 1, and answer of defendant board," all of which were filed while the case was pending in the Circuit Court of Powhatan county, and the proceedings had thereon from time to time by said court, are likewise copied in the record. The removal of the case to Chesterfield county and the docketing there, and the removal to the Circuit Court of Petersburg and the docketing there, are thus certified in the record of this cause, as made by the clerk of the Circuit Court of Petersburg:

"And at another day, to-wit: At a Circuit Court, continued and held for the county of Powhatan, at the courthouse thereof, on the 23rd day of April, 1892, the judge of this court being so situated as to render it improper, in his opinion, for

him to decide this cause, or preside at the trial thereof, the court doth order that this cause be removed to the Circuit Court of the county of Chesterfield for all further proceedings therein.

"And at another day, to-wit: At a Circuit Court, continued and held for the county of Chesterfield, at the courthouse thereof, on the 24th day of May, 1892.

"This cause, which was removed to this court from the Circuit Court of Powhatan county, is ordered to be docketed in this court, which is accordingly done. By consent of all parties, by counsel, given in open court and entered of record, this cause is submitted to the judge of this court for decision and decree in vacation.

*Decree removing cause to Petersburg.*

"And at another day, to-wit: At a Circuit Court, held for the county of Chesterfield, at the courthouse thereof, on the 28th day of November, 1892. By consent of all parties to this cause, by counsel, it is ordered that this cause be removed to the Circuit Court of the city of Petersburg to be therein further proceeded in.

*Decree Docketing Cause in Petersburg.*

"And at another day, to-wit: At a Circuit Court, held for the city of Petersburg, at the courthouse thereof, on the 5th day of December, 1892.

"This cause, which was removed to this court from the Circuit Court of Chesterfield county, was this day docketed in this court, by consent of the parties, by counsel. And, thereupon, on the motion of the plaintiffs, by counsel, leave is given them to file their supplemental and amended bill No. 2, which bill is accordingly filed."

None of the orders made by the Circuit Court of Powhatan

county bear the certificate of the clerk of that court, nor are the orders made by the Circuit Court of Chesterfield county certified by the clerk of the latter court.

After the case was docketed in the Circuit Court of Petersburg, the complainants filed "amended and supplemental bill No. 2," in which they refer to their "original and amended and supplemental bills" then pending in that court, and pray, amongst other things, that "the relief prayed for in the bills aforesaid may be granted."

The cause then proceeded, without objection as to jurisdiction, until the final decree was rendered. The other facts sufficiently appear from the opinion of BUCHANAN, J.

*W. M. Flanagan*, and *E. P. Buford*, for appellants.

*Pegram & Stringfellow* and *J. P. Fitzgerald*, for appellees.

BUCHANAN, J., delivered the opinion of the court.

The first assignment of error in this case is that the Circuit Court of the city of Petersburg, which entered the decree appealed from, had no jurisdiction of the case. It appears from the record that the suit was brought in the Circuit Court of Powhatan county by the appellants, William M. Flanagan and Robert Bell, citizens and taxpayers of that county, for the benefit of themselves and other taxpayers, against the Farmville & Powhatan Railroad Company and the Board of Supervisors of that county, to enjoin the railroad company from asserting and exercising any rights under an alleged subscription of $40,000, made by that county to the railroad company, and to restrain the board of supervisors from levying taxes to pay the bonds issued to pay such subscription, to set aside and annul the same, and for general relief. After the cause had been pending in that court from January, 1891, to April, 1892, during which time the bill and amended bill, petitions,

demurrers, and answers had been filed, the case was removed
to the Circuit Court of Chesterfield county, because the judge
was so situated that, in his judgment, it was improper for him
to try the cause.    In December of that year, by consent of
parties, the cause was removed from the Circuit Court of
Chesterfield county to the Circuit Court of the city of Peters-
burg.    The papers copied into the record show these facts.
But the clerk of the Circuit Court of Powhatan county failed
to make and certify copies of the rules and orders made in his
court in the case before its removal to Chesterfield county, as
required by section 3318 of the Code.    The clerk of the Cir-
cuit Court of Chesterfield was guilty of the same negligence
when the case was removed from his court to the Circuit Court
of the city of Petersburg.    It is contended by the appellants
that, since the suit was brought in the Circuit Court of Pow-
hatan county, and there is no record evidence of its removal to
the Circuit Court of the city of Petersburg, the last-named
court had no jurisdiction of the case.    If there had been no
appearance in the case in that court by the party raising the
objection to its jurisdiction, it might present a question of
some difficulty.    But the appellants here (the complainants in
the court below) consented to the docketing of the case in that
court, and the following order was entered at its December
term, 1892: "This cause, which was removed to this court
from the Circuit Court of Chesterfield county, was this day
docketed in this court by consent of the parties by counsel;
and thereupon, on motion of the plaintiffs by counsel, leave is
given them to file their supplemental and amended bill No. 2,
which is accordingly filed."    The case was then proceeded in
to a final decree, without objection upon the part of any one.
The Circuit Court of Petersburg had general jurisdiction of
the class of cases to which this case belongs, and by consenting
that this case might be docketed and proceeded in in that court
the appellants waived all right to object to its jurisdiction,

even though there had never been any order removing the case
from the Circuit Court of Powhatan county. The mere fact
of a party taking and agreeing to a continuance is evidence of
his having made himself a party to the record, and of his hav-
ing recognized the case as in court. It is too late afterwards
for him to say that he has not been regularly brought into
court. *Harvey* v. *Skipwith,* 16 Gratt. 414, 415. If other
authority were required for a proposition of law so plain, it
will be found in a decision of this court in the case of *McAlex-
ander* v. *Hairston,* reported in 10 Leigh, 486. There an action
of slander was instituted in the Circuit Superior Court of Law
and Chancery for Floyd county. The judge of that court,
being so situated that he could not try the case, removed it
after the issues had been made, to the County Court of the
county. Trial was had in that court, and a judgment rendered.
Upon a writ of error the Circuit Superior Court of Mont-
gomery county reversed it, on the ground that the County
Court had no jurisdiction of the case; but upon a writ of error
to this court the judgment of the Circuit Court was reversed,
and that of the County Court affirmed. In delivering the
opinion of this court in that case, Judge Stanard said: "With-
out deciding, or even considering, the question whether the
order of the Superior Court, made by consent of the parties,
removing the case to the County Court for trial, would *proprio
vigore* place the case, in its then condition, in the County
Court for trial, * * * I am of opinion that parties may,
by consent, make up the pleadings and issue in a case, and
have it docketed in any court having jurisdiction for the trial
of such a case; that over a case so docketed, on the parties
appearing before the court in which it may be so docketed,
making no objection to the regularity of the docketing of it,
that court may exercise jurisdiction; and that the objection to
the jurisdiction of the court, coming for the first time after
the trial and judgment in the case, cannot be sustained."

The appellants insist further, if it be held that the Circuit Court of the city of Petersburg had jurisdiction of the case, the papers filed in the case before it was docketed in that court cannot be considered as parts of the record. This view cannot be sustained. The whole record as copied was before the Circuit Court when it decided the case. This is shown by the proceedings had and pleadings filed in the Circuit Court of the city of Petersburg. In the second amended and supplemental bill, filed in the case after it was docketed in that court, the statement is made that the original bill was then pending in that court. The final decree in the case dissolves the injunction granted in the case, and dismisses the original and amended and supplemental bills. These bills, with all the other pleadings, and the proofs taken in the case, must, therefore, have been before the court when that decree was entered. It is not to be presumed that counsel would argue and the court decide a case in the absence of these papers, when the record shows as a matter of fact that all of the papers were then in that court.

Another ground of objection relied upon by the appellants is, that the bonds issued by the county of Powhatan in payment of its stock subscriptions to the railroad company are invalid because of numerous irregularities attending the election authorizing their issue. Among the more important of these are the allegations that the order of the County Court directing the election was irregular and void; that no legal notice was given of the election; that the election itself was irregular and illegal; that the meetings of the board of supervisors appointing commissioners to make the subscription of stock to the railroad company, and also their meetings directing the bonds to be issued, were illegal; and that the bonds issued are payable at a different date from that provided by the statute authorizing their issue. The record shows that the election,

validity of which is in question, was held on the seventh day of August, 1886; that the stock subscription was made on the 5th day of September of that year; that the bonds were issued by the board of supervisors, and delivered to the railroad company on the 14th day of October, 1887, and were turned over by that company to the Bermuda Construction Company, on account of what the railroad company owed that company for building the railroad; and that the construction company disposed of them to various holders. The holders of the bonds, who are parties to this suit, claim that they are *bona fide* purchasers for value, and that, although the proceedings had prior to their issue, and which were conditions precedent, may have been irregular, or even in violation of the law which authorized their issue (which is denied), still the recital on the face of the bonds that they were issued pursuant to the law which authorized their issue estops the appellants from questioning their validity. They also claim that the county of Powhatan and its taxpayers are estopped from questioning their validity by reason of their failure to interfere and enjoin their issue when they were about to be issued, before the rights of *bona fide* third parties had accrued, and by receiving and keeping the proceeds or benefits derived from them. They claim that the bonds were used for the purpose of paying for the construction of the railroad through the county, and that no objection was made to the action of the board of supervisors in issuing and delivering them to the railroad company, nor any steps taken to question their validity, until the 16th day of December, 1890, when this suit was brought, and the injunction hereinbefore mentioned was obtained. This was more than four years after the election was held, more than three years after the bonds were issued, and several months after the railroad was completed.

It is also contended by the appellees that, even if the facts stated in the bill and amended bills were true, and the matters

of estoppel relied upon were held to be sufficient, still the appellants are not entitled to the relief sought, because the action of the authorities of Powhatan county in making the subscription to the railroad company and in issuing and delivering the bonds in payment thereof was ratified and confirmed by the General Assembly by act approved February 8, 1888. If it be true, as claimed, that the legislature has ratified and confirmed the action of the county in making such subscription and issuing such bonds, it will be unnecessary to consider any of the questions raised in the case as to their regularity or validity; for the power of the legislature to authorize a county or other municipality to make such a subscription to the stock of a railroad company, and to issue bonds with which to pay it, is settled in this State. And it is also settled that if, by reason of mistake, carelessness, or other causes, the conditions precedent to the exercise of such power by the municipality have not been complied with, the legislature can cure all irregularities by subsequent legislation, and make such contracts as valid and binding as if all the conditions precedent had been strictly complied with. *Redd* v. *Supervisors*, 31 Gratt. 695; *Supervisors* v. *Randolph*, 89 Va. 614. The effect of the act of Febuary 8, 1888, will now be considered.

The act is as follows:

" *Whereas,* the counties of Cumberland and Powhatan have each subscribed forty thousand dollars to the capital stock of the Farmville and Powhatan Railroad Company, and have paid such subscription in conditional bonds, as authorized by an act of Assembly approved February fifth, eighteen hundred and eighty-six, entitled ' An act to authorize a subscription by the counties of Cumberland and Powhatan to the stock of the Farmville and Powhatan Railroad Company ;' therefore,

"1. *Be it enacted by the General Assembly of Virginia,* That on the completion of the Farmville and Powhatan Railroad, as proposed, across the counties of Cumberland and Powhatan, respectively, the said conditional bonds, issued by the said counties respectively, shall, in the discretion of the respective boards of supervisors of said counties, be exchanged for coupon bonds, stating that the sum due is for value received, aggregating an

equal amount, with like conditions as to rate of interest and time and place of payment of principal and interest. On such exchange being made, there shall be delivered to such county, certificates of stock of the Farmville and Powhatan Railroad Company for an amount equal to that of said coupon bonds delivered.''

The general rule of construction is that a statute ought not to be given a retrospective effect, unless it can be ascertained with certainty from the language of the act that such was the intention of the legislature. Mr. Dillon says (Vol. 2, Mun. Corp., sec. 544): ''Subsequent legislative sanction within constitutional limits is equivalent to original authority, but the intention of the legislature to validate the subscription, or the bonds, must clearly appear from the terms of the curative act.'' Mr. Cooley says: ''Legislation of this character is exceedingly liable to abuse; and it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.'' Cooley, Const. Lim. 456. Testing the act in question by these rules, it would seem that its only effect would be to give to the boards of supervisors of those counties, respectively, the right, if they chose to exercise it, of exchanging coupon bonds for the conditional bonds theretofore issued, and to receive an equal amount of stock of the railroad company therefor, without in any way depriving those counties, or their taxpayers, of the right of setting up any defense which they might have to the validity of the conditional bonds. This seems to be the fair and legitimate construction of the act, for there is nothing in it that shows with clearness and certainty an intention to ratify. As was said in *State* v. *Stoll*, 17 Wall. on p. 436: ''If the legislature intended to do what is claimed, they ought to have done so openly, intelligibly, and in language that could not be misunderstood. And as a doubtful or obscure declaration would not be justifiable, so it is not to be imputed.'' *Hays* v. *Holly*

*Springs,* 114 U. S. 120, 126. To give it the construction contended for, would be to hold, it seemed to me, that an act passed ostensibly for the purpose of giving a privilege or granting a power would result in taking away a right, or in cutting off a remedy; and, if it were a question of first impression in this court, I would be unwilling to give it the construction contended for. But the same question has been before this court once upon this very statute, and once upon a similar statute, and the court adopted the construction contended for by the appellees.

In the case of *Redd* v. *Supervisors, supra,* a statute was held to ratify and confirm a subscription to a railroad company made by that county. The people of Henry county had voted a subscription of $100,000 to the capital stock of the Danville and New River Railroad Company. Before the bonds were issued, a suit was brought by taxpayers of that county to enjoin the issue of the bonds with which to pay the subscription, alleging that the proceedings which led up to the subscription were irregular and illegal. While that case, which had been appealed, was pending in this court, the General Assembly passed a statute, which will be found in the Acts of Assembly of 1878-'79, p. 282. In the preamble of that act it is recited that a subscription of $100,000 had been voted by the people of that county to the stock of that railroad company, and then it is recited that it has been suggested that the said subscription of $100,000 may require the imposition of an annual tax in excess of the amount on the $100 value of taxable property specified in section 62, ch. 61, of the Code of 1873. For that reason the statute was passed which authorized the supervisors of that county to carry out the wishes of the majority of the voters of that county as expressed by said vote, or which may hereafter be expressed by the voters of said county, and to assess and levy such tax as might be necessary to pay that subscription, or any such sub-

scription to said company as might hereafter be made, etc.
The act seems to contemplate that the vote already taken
might, for some cause, be held invalid, and that another elec-
tion might be necessary in order to authorize the county to
make such subscription.    At that very time a case was pend-
ing upon appeal in this court, as stated above, to test the
validity of the subscription already made.    Notwithstanding
these facts, this court held that, if there had been any defects
or irregularities in the election or other proceedings leading
up to the subscription, they were all cured by that statute.
The judge delivering the opinion of the court, on this point,
said: "Since the foregoing opinion was written, it has come
to my knowledge that the governor of the Commonwealth has
approved an act passed by the General Assembly authorizing
the supervisors of Henry county to carry out the wishes of the
majority of the voters of Henry county as expressed by the
vote taken on the 11th day of September, 1875, and to assess
and levy such annual tax as may be necessary to pay the sub-
scription of one hundred thousand dollars, notwithstanding
the limitations prescribed by the sixty-second section of chap-
ter sixty-one of the Code.    The conclusions which I have
reached in this case are independent of the special act referred
to, but it may be as well to say that, if there were any defects
or irregularities in the proceedings reviewed in this opinion,
which might offset [affect] the subscription made by the
supervisors, they are cured by this legislation.    That such
legislation is valid, seems to be well settled.    Defective sub-
scriptions may in all cases be ratified where the legislature
could have originally conferred the power.    Mistakes and
irregularities are of frequent occurrence in municipal elections,
and the State legislatures have often had occasion to pass laws
to obviate such difficulties.    Such laws, when they do not im-
pair any contract, or injuriously affect the rights of third per-
sons, are never regarded as objectionable, and certainly are

within the competency of the legislative authority." The provisions of that statute, both in the preamble and in the enacting clause, are very similar to the act we are considering. Its provisions show no more clearly or certainly that it was intended by the legislature to have a retrospective effect than does the act of February 8, 1888.

In the case of *Supervisors* v. *Randolph, supra,* the act of February 8, 1888, was brought before this court for construction. In that case the judge, delivering the opinion of the court, said: "Besides, whatever ground of objections there might be if the case stood upon the act of February 5, 1886, alone, any irregularities which may have occurred in the proceedings under that act were cured by the act of February 8, 1888. The latter act recognized the validity of the subsciption that had been made, and all that had been done under the prior act, and in express terms authorized the issue of coupon bonds, on completion of the railroad across the counties of Cumberland and Powhatan, in lieu of the conditional bonds which had already been issued to the railroad company under the prior act. This it was clearly competent for the legislature to do, both on principle and authority."

These authorities seem to be conclusive of the question that the effect of the act of February 8, 1888, was to cure all irregularities or defects in the bonds, or in the proceedings leading up to their execution. Having reached this conclusion, it renders a decision of the other questions raised unnecessary. Our opinion, therefore, is that there is no error in the decree of the Circuit Court of the city of Petersburg, and that it should be affirmed.

RIELY, J., concurs with BUCHANAN, J.

KEITH, P., concurring, said:
I concur fully in the conclusion reached by Judge Buchanan

in the opinion just read in this case, and I think the decree appealed from should be affirmed. Such irregularities as may have existed antecedent to the issuing of the bonds by the county of Powhatan have been cured by the act of Assembly referred to. This would be my judgment were the question one of first impression, and my confidence in its correctness is, of course, greatly strengthened by the decisions of this court in the case of *Redd* v. *Supervisors*, 31 Gratt. 695, the opinion in which was delivered by Judge Burks, and in the very recent case of *Supervisors* v. *Randolph*, 89 Va. 614, in which the opinion was delivered by Judge Lewis, construing the statute relied upon here.

CARDWELL, J., concurs with KEITH, P.

HARRISON, J., dissenting, said:

I am unable to concur in the conclusion reached by my brethren in this case. I cannot see that the act under consideration ratifies anything, or was intended to be retrospective in its operation. It seems to me the only purpose of the act was to give the county of Powhatan the privilege of issuing coupon bonds in the place of conditional bonds. The county declined to exercise this privilege. And the act, which, on its face, was intended as a benefit, is now made the means of ruin to the beneficiary, so far as the payment of this large debt is concerned. My views on this subject are so fully expressed in the reasoning of Judge Buchanan against his conclusion that I deem it unnecessary to say more, except to add that I do not attach to the two cases relied on for his conclusion the weight given them by him. The construction of the act was not necessary to the decision of either of those cases. In *Redd* v. *Supervisors*, 31 Gratt. 695, the case had been decided on its merits in favor of the railroad without regard to the act; and in the case of *Supervisors* v. *Randolph*, 89

Va. 614, the county itself had ratified all prior proceedings by accepting the privilege given in the act, and issuing the coupon bonds. This the county of Powhatan declined to do, and was, therefore, in my opinion, entitled to all defenses against the conditional bonds which it could have made before the act was passed, and is not estopped to make that defense by its letter or spirit.

AFFIRMED.