# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## C. L. MORRISS v. H. M. WHITE.

### February 25, 1926.

#### Absent, Christian and McLemore, JJ.

1. PLEADING—*Election—Declaration Stating Two Causes of Action not Related—Case at Bar.*—In the instant case the entire frame of the declaration plainly showed that the plaintiff was suing in trespass for the value of timber cut from land, but the declaration also contained an allegation that defendant, who had no interest in the land, by false representations to plaintiff, induced plaintiff to purchase the land. Plaintiff was required to elect whether he would proceed to trial on the cause of action arising from the alleged trespass of cutting and removing of timber or upon the personal cause of action arising from the allegations of fraud and deceit by the defendant. Plaintiff elected to go to trial on the cause of action for cutting and removing the timber.

    *Held:* That the action of the trial court in requiring plaintiff to elect was not prejudical to plaintiff.

2. TREES AND TIMBER—*Remedy for Cutting and Removing Timber—Case at Bar.*—In an action for cutting and removing timber the declaration set out very fully a right of action founded upon a trespass upon real estate; this is the proper mode of proceeding for the unlawful cutting of timber, unless an action is brought in trover or detinue for the timber removed after the cutting.

3. DECLARATIONS—*Duplicity—Demurrer.*—It is a recognized rule of practice in Virginia that duplicity in a declaration, or in a single count, cannot be reached by a general demurrer, and since special demurrers have been abolished in this State, that fault in pleading is not in any way subject to demurrer.

4. LIMITATION OF ACTIONS—*Plea in Usual Form—Motion to Reject Plea—Case at Bar.*—In the instant case, an action for cutting and removing timber, plaintiff assigned as error the action of the trial court in overruling his motion to reject the defendant's plea of the five year statute of limitations.

    *Held:* That as the plea was in the usual brief form generally approved in Virginia, there was no reason why the trial court should have sustained plaintiff's motion to reject it.

5. LIMITATION OF ACTIONS—*Limitation Does not Run Against Common-wealth—Plea—Motion to Reject Plea—Case at Bar.*—In the instant case, an action for cutting and removing timber, plaintiff assigned as error the action of the trial court in overruling his motion to reject the defendant's plea of the five year statute of limitations. Plaintiff's motion to reject the plea was made upon the ground that the claim set up in the declaration was originally due by defendant to the Commonwealth and that the limitation did not run against the Commonwealth.

*Held:* That such a reply to the plea could not be asserted by way of a motion to reject or strike out the plea.

6. STATUTE OF LIMITATIONS—*Plea—Duplicity in Replication—Case at Bar.*—In the instant case, an action for cutting and removing timber, defendant pleaded the statute of limitations and plaintiff replied that the cause of action was originally in favor of the Common-wealth and that the statute did not run against the Commonwealth, and that defendant obstructed the prosecution of the claim.

*Held:* That the replication was duplicitous.

7. PLEADING—*Duplicity—Appeal and Error.*—Where an objection to a pleading as duplicitous was seasonably made in the lower court, the appellate court has to pass upon it, although if the question had been presented for the first time on appeal it would not have been considered.

8. PLEADING—*Special Plea—More than one Reply.*—In Virginia it is a settled maxim of pleading that only one reply can be made to a special plea.

9. LIMITATION OF ACTIONS—*Plea—Replication—Striking Out Part of Repli-cation—Case at Bar.*—In the instant case, an action for cutting timber, defendant pleaded the statute of limitations. In his repli-cation to the plea, plaintiff alleged that the cause of action was originally in the Commonwealth and also that defendant had ob-structed the prosecution of the claim. On motion the trial judge struck out the first part of the replication in regard to the cause of action having been in the Commonwealth, because the averment was necessarily inconsistent with prior pleadings in the case.

*Held:* That there was no error in the action of the court prejudicial to the plaintiff.

10. JUDGMENTS AND DECREES—*Setting Aside Judgments and Decrees—Absence of Defendant and Counsel—Discretion of Trial Court—Case at Bar.*—At the trial of the instant case, which resulted in a verdict and judgment for the plaintiff, neither the defendant nor his counsel was present. At the day first fixed for the trial, counsel for both sides were present and prepared to go into the trial. The case could not be reached on that day, but it was understood that it would be tried at that term of court as soon as it could be reached. On the day before the case was reached, messages by telephone to the defendant and by wire

Syllabus.

to the defendant's counsel were sent. Upon motion to set aside the verdict the court, upon affidavits, and no doubt upon the oral statements of counsel, was convinced that these messages did not reach defendant and his counsel until after the day set for hearing.

*Held:* That the action of the court in setting aside the judgment and verdict in favor of plaintiff was an exercise of judicial discretion, which the appellate court did not feel it should interfere with.

11. Demurrer—*Motion that Defendant Should State in Writing More Specifically the Grounds of the Demurrer—Section 6115 of the Code of 1919—Object of the Statute.*—Section 6115 of the Code of 1919, provides a brief form for a general demurrer to a declaration or other pleading, and further requires that the demurrant shall, on motion of the opposite party, state the grounds of the demurrer specifically. The object of this statute is in the main two fold, that is to prevent reliance being placed upon an undisclosed objection to a mere matter of form, which is capable of amendment, and to prevent the demurrant from presenting, on appeal, grounds for the demurrer not relied upon before the trial court.

12. Demurrer—*Motion that Defendant Should State in Writing More Specifically the Grounds of the Demurrer—Demurrer to a Replication—Case at Bar.*—In the instant case, an action for cutting and removing timber, defendant plead the statute of limitations and plaintiff filed a special replication to which the defendant demurred. Plaintiff then moved, under section 6115 of the Code of 1919, "that the defendant be required to further and more specifically state the grounds of the said demurrer in writing." The court overruled this motion. Considering the nature of the special plea, the facts set up in the replication, and the conclusion of the replication to the effect that "the plaintiff says that the said defendant by the indirect ways and means aforesaid obstructed the prosecution of the claims and demands against him set up in the declaration," thus in terms relying upon section 5825 of the Code of 1919, in avoidance of the statute, the demurrer sufficiently stated its one ground of demurrer and one only.

13. Limitation of Actions—*Cutting and Removing Timber—Defendant Obstructing Prosecution of Claim—Case at Bar.*—In the instant case, an action for cutting and removing timber, defendant pleaded the statute of limitations; and plaintiff in his reply relied on section 5825 of the Code of 1919, providing that, if defendant obstructed the prosecution of the right, the time that such obstruction continues shall not be computed as part of the limitation period, asserting that when he purchased the land defendant, who had no interest in the land, told him that he had taken no timber from the land.

*Held:* That this false statement of the defendant was not an obstruction to the prosecution of the right under section 5825 of the Code of 1919, and that the demurrer to the replication was properly sustained.

14. LIMITATION OF ACTIONS—*Obstructing Prosecution of Suit—Denial of Existence of a Fact—Case at Bar.*—There may no doubt be circumstances under which a denial of the existence of a fact, intentionally made to ward off the prosecution of a right by the plaintiff, should be held to be a fraudulent obstruction to the institution of the suit. But in the instant case, where plaintiff alleged that defendant induced him to purchase land by denying that the defendant had cut timber from the land in which defendant had no interest, the denial could not have been intended to obstruct any right of action vested in the plaintiff.

15. DEMURRER—*Sustaining Demurrer—Final Judgment.*—If there be a demurrer to some counts of a declaration while issues of fact are pending on other counts, final judgment cannot be entered upon sustaining the demurrer while such issues of fact are pending. The same rule applies where issues of law and fact are pending on several pleas. But if the question of law raised by the demurrer goes to the whole merits of the case, final judgment may be entered thereon without trying the other issues.

Error to a judgment of the Circuit Court of Buckingham county. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

In September, 1910, a decree was entered, in a chancery cause pending in the Circuit Court of Buckingham county under the style of *Board of Supervisors of Buckingham Co.* v. *Admr. of P. A. Forbes, deceased, et als.*, by which E. W. Hubard and F. C. Moon were appointed special commissioners to make sale of a certain tract of land in said county containing 217 acres formerly owned by the said P. A. Forbes, who was the clerk of Buckingham county and died in 1904. This land was sold by the special commissioners in 1920 to Dr. G. L. Morriss, the plaintiff in error, for $4.00 an acre, aggregating $868.00; and by decree of May 12, 1920, the court confirmed the sale, directed the commissioners to collect the purchase money, and to make a deed to the purchaser. This decree concludes as follows:

"And said Hubard and Moon, commissioners, shall pay one-half of said purchase money to E. W. Hubard, attorney for the board of supervisors of Buckingham county, and one-half thereof to F. C. Moon, attorney for the Auditor of Virginia, on account of their respective claims asserted in this cause.

"And this cause has been pursued as to the other funds, one-half thereof going in hands of E. W. Hubard, attorney for board of supervisors, and the other one-half to F. C. Moon, attorney for the Auditor of Public Accounts."

Exactly how P. A. Forbes the former clerk became indebted to the county and State does not appear. It is evident, however, that this chancery proceeding was in the nature of a creditor's suit, and the land was sold to discharge indebtedness due from Forbes to his creditors, among whom were the county and the State, the money owing to them being either for delinquent land taxes or on account of monies in the hands of the deceased while clerk of the county.

Having paid the purchase price promptly and received a deed for the tract of land in May, 1920, Morriss, the purchaser, subsequently filed a petition in the suit under a decree of October 13, 1921. This decree recites the allegations of the petition to be that Dr. Morriss claimed it was represented to him before and at the time of the sale, and he understood, that no timber, ties, etc., had been cut and sold from said land; that the land was well timbered and the timber thereon constituted its principal value; that since the land had been conveyed to him he had discovered that before the sale of it to him the standing timber had been largely cut and sold, and its value greatly reduced and almost destroyed, and he would not have bought said land but for the representations made to him

and his belief that they were true; that "said Morriss claims that said timber, ties, etc., were so largely if not entirely cut, sold and removed from said lands by H. M. White, and that said White should now be required to pay therefor."

Following these recitals the court authorized Morriss, the purchaser, to sue White, as follows:

"It is adjudged, ordered and decreed that all claims and demands against said H. M. White and any others for damages for cutting, removing and selling said timber prior to the said sale to said Morriss, and since the institution of this suit, be and the same are hereby assigned to the said G. L. Morriss and he is hereby authorized and empowered to collect the same and institute and prosecute such actions at law or other legal proceedings as he may be advised in his own name against the said H. M. White and any other party or parties who may have unlawfully cut, removed and sold timber, ties, etc., from said lands during the period aforesaid; to collect and recover all damages and sums for which said H. M. White or other parties aforesaid may be liable in the premises.

"And E. W. Hubard and F. C. Moon, trustees, in whom the legal title of said lands was vested at the time of the cutting and selling of said timber, ties, etc., and also said E. W. Hubard and F. C. Moon, as commissioners in this cause, are authorized and directed, upon request of said G. L. Morriss, to make, execute and deliver to said Morriss an assignment to him of all such claims and liabilities for the cutting, removal and sale of said timber, ties, etc., or said Morriss if he desires may prosecute such action or other legal proceedings therefor as he may be advised in the names of said commissioner or trustee for his benefit."

Accordingly Morriss brought an action of trespass on the case against White, but not until January, 1923. The declaration contains a statement of the sale by the commissioners in the above mentioned suit, payment by the plaintiff and the execution of the deed to him, and then proceeds, as follows:

"That at the time he the said plaintiff so purchased said lands and before said plaintiff paid the purchase money therefor, he made inquiry of said commissioners as to the timber then standing and growing thereon and it was represented to said plaintiff by said commissioners that no timber had been cut from said land since the death of said P. A. Forbes, who was the former owner thereof and who died many years before that time, to-wit: About the year 1906, and that then there was at the time said plaintiff so purchased said lands a large quantity of valuable standing timber thereon; that before so purchasing said lands said plaintiff also inquired of the said defendant, H. M. White, and asked said White whether or not he, the said White, had theretofore cut any timber from said lands; that said White then intending and contriving to mislead the plaintiff informed said plaintiff that he had not cut any timber from said lands and had not authorized anyone else to cut any timber therefrom and said plaintiff then relying upon said representations and statements so made to said plaintiff by said commissioners and by said White as aforesaid, and believing the same to be true said plaintiff agreed to so purchase said lands from said commissioners as aforesaid and did so purchase said lands as aforesaid and so paid said commissioners said purchase money therefor; that said plaintiff would not have so purchased said lands nor so paid said purchase money therefor if said representations and statements had

not been so made to him by said commissioners and by said White as aforesaid, and if said plaintiff had not relied upon and believed said statements and representations to be true; that after said plaintiff had so purchased said lands and had so paid said purchase money therefor, and after said lands had been so conveyed to plaintiff as aforesaid, he the said plaintiff then for the first time discovered and learned that before the plaintiff had so purchased said lands and before he so paid the purchase money therefor and after said lands had been so conveyed to him, he the plaintiff then for the first time discovered and learned that before the plaintiff so purchased said lands and so paid said purchase money therefor said defendant himself without the knowledge or consent of said commissioners and without the knowledge or consent of the plaintiff and without any lawful right or authority whatsoever to do has so cut, removed and sold from lands a large quantity of valuable timber, ties and other growth of the value of at least $5,000.00; that said defendant, H. M. White, when he so cut, removed and sold said timber, ties and other growth from said lands, well knew that he did not have any lawful right, power or authority to 'do so. And the said plaintiff says that by another decree entered in said cause at the October term, 1921, of said court all claims against said H. M. White and all sums due by or recoverable from said defendant, H. M. White, for or on account of the cutting, removing and selling said timber, ties and other growth from said lands were assigned to said plaintiff and said plaintiff was by said last mentioned decree authorized and empowered to collect the same and to institute and to prosecute this action against the said defendant to collect and recover from the said defendant all damages and sums for which said defendant is liable in the premises.

"By means whereof and by reason of the acts aforesaid of the said defendant the plaintiff hath been caused by the said defendant to suffer and sustain and has suffered and sustained damages to the amount of $5,000.00 and an action hath accrued to the plaintiff to have and recover the same from the said defendant.

"And, therefore, he brings this action of trespass on the case."

In March, 1923, on motion of the defendant, the plaintiff was required to elect whether he would proceed to trial on a cause of action arising from the alleged trespass and cutting and removing of timber valued at $5,000.00, or upon a personal cause of action arising from the allegations of fraud and deceit by the defendant and sounding in damages.

The plaintiff elected to strike out the allegations of deceit, and to go to trial on the first mentioned cause of action, but excepted to the ruling of the court requiring him to make the election.

The defendant then filed the general issue of not guilty, and a written plea of the five year statute of limitations, to which latter plea the plaintiff filed a replication in writing.

On December 14th following a trial was had in the absence of the defendant and his counsel, and a verdict and judgment therein rendered for the plaintiff. This verdict and judgment was subsequently, at the same term, set aside by the court and a new trial awarded. The defendant later demurred to the plaintiff's replication to the plea of the statute of limitations. This demurrer was sustained by the court, and, the plaintiff not pleading further, the court entered final judgment for the defendant, whereupon the defendant brought this writ of error.

*Claud R. Wood, Hubard & Boatwright* and *John D.. Easley*, for the plaintiff in error.

*A. B. Dickinson*, for the defendant in error.

CRUMP, P., after making the foregoing statement,. delivered the following opinion of the court.

[1, 2, 3] The plaintiff assigns as error the ruling of the court requiring him to make an election between the two causes of action claimed by the defendant. to have been set up in the declaration. It is argued by the defendant that plaintiff declared upon two separate causes of action not similar in their nature and requiring widely different defenses, and therefore the declaration was open to the objection of duplicity,. and the court properly required the plaintiff to elect upon which cause of action he would rely. The two distinct causes of action are claimed by the defendant. to be (1) a claim for damages to the freehold occasioned by the alleged cutting of ties and bark without authority, which claim the plaintiff states was assigned to him by the court by its decree entered in the cause in. which the land was sold, and (2) a claim for damages. alleged to have been suffered by the plaintiff personally by reason of the deceit averred by the plaintiff to have been practiced upon him by the defendant. The declaration sets out very fully a right of action founded. upon a trespass upon real estate, which is the proper mode of proceeding for the unlawful cutting of timber, unless an action is brought in trover or detinue for the timber removed after the cutting. *Wood* v. *Weaver*, 121 Va. 250, 92 S. E. 1001; *French* v. *Stange Mining Co.*, 133 Va. 602, 615, 114 S. E. 121. It is a. recognized rule of practice in Virginia that duplicity

in a declaration, or in a single count, cannot be reached by a general demurrer, and since special demurrers have been abolished in this State, that fault in pleading is not in any way subject to demurrer. The defendant insists that, therefore, the method approved by the trial court is the proper way to confine the plaintiff to a statement of a single cause of action, and so prevent embarrassment to the defendant as to how he shall plead—citing therefor *C. & O. Ry. Co.* v. *Rison,* 99 Va. 18, 37 S. E. 320; Burks Pl. & Pr. (2nd ed.), page 327. Whether the fault in the declaration claimed to exist be properly a misjoinder of causes of action or mere duplicity, we do not think it necessary in either event to pass upon the question, for the draftsman of the declaration lays as the actual foundation for his complaint the unlawful cutting of the timber and the assignment to him of the claim therefor. He states very fully the circumstances under which the plaintiff bought the property, relying upon the representations of both the commissioners and of White, and further, that White had in fact committed the trespass and removed and carried off timber to the value of $5,000.00 without any lawful right or authority. He then proceeds to allege that he has authority to institute *this action* by reason of the assignment made to him of the claim against White for cutting the timber. The allegation that White upon enquiry misrepresented to him the fact that he had cut timber on the land may be immaterial, but that assertion in the declaration was evidently to emphasize the lack of right or authority on the part of White to cut the timber. It is nowhere alleged that White had any interest in the land, or took any part in the negotiations looking to its sale; the pleader should not be taken to have intended to combine with

his right of action clearly stated an action for damages arising from the fraudulent inducement to or procurement of a contract, by the mere statement in the declaration that upon enquiry of a third party as to a matter bearing upon the value of the property, that person gave him a false answer. The entire frame of the declaration plainly shows that the plaintiff was suing in trespass for the value of the timber cut from the land. That being so the ruling of the trial court could not and did not affect any substantial right of the plaintiff, and, therefore, the assignment of error in this respect is not well founded.

[4, 5] The plaintiff assigns as error the action of the court in overruling his motion to reject the defendant's plea of the five year statute of limitations. The plea is in the usual brief form generally approved in Virginia, and we see no reason why the court should have sustained the motion. It is stated in the petition the motion was made upon the ground that the claim set up in the declaration was originally due by White to the Commonwealth of Virginia and that the limitation did not run against the Commonwealth. It is manifest that such a reply to the plea could not be asserted by way of a motion to reject or strike out the plea. There was no error in this ruling of the court.

By the order entered on October 17, 1923, the plaintiff filed a special replication to defendant's plea of the statute of limitations. The order recites that the defendant moved the court to reject the special replication on the ground that it was duplicitous, and thereupon the court ordered to be stricken out "the first paragraph of said special replication containing allegations that the title to the claim sued on was in the Commonwealth, and that the statute did not run

against the Commonwealth, and the balance of said replication is allowed to stand." This ruling of the court is the basis of the third assignment of error. The first paragraph of the replication is as follows:

"The said plaintiff comes and says that the cause of action mentioned in the declaration in this action was originally in favor of and due to the Commonwealth of Virginia and that the defendant was liable therefor to the Commonwealth of Virginia, and that the same was assigned to this plaintiff on the _____ day of October, 1921, and that under the laws of Virginia the statute of limitations does not run against the Commonwealth of Virginia and does not run against the plaintiff as the assignee of the Commonwealth, and that this suit was brought in less than five years after said cause of action was assigned to this plaintiff."

If the Commonwealth was the owner of the land at the time the trespass was committed, it was then public property and the right to sue for the trespass resided in the proper official of the Commonwealth. If this was the theory of this part of the replication to the plea, it presented a complete answer to the plea of the statute, and issue might have been taken upon the fact of ownership by the Commonwealth. The replication then continues, with a *further* reply to the plea, as follows:

"The plaintiff further replying to the plea of statute of limitations comes and says that at the time he purchased the lands in the declaration mentioned, to-wit: On the 12th day of May, 1920, he made enquiry of the commissioners who sold him said land as to the timber then standing and growing thereon and that it was then represented to the plaintiff by said commissioners that no timber had been cut from said land since the death of P. A. Forbes, who was the former owner thereof and

who died many years before that time, to-wit: About the year 1905, and this plaintiff further says that before so purchasing said lands the plaintiff also inquired of the defendant, H. M. White, and asked said White whether or not he, said White, had theretofore cut any timber from said lands; that said White then intending and contriving to mislead the plaintiff, informed the plaintiff that he had not cut any timber from said lands and had not authorized anyone else to cut any timber therefrom and that the plaintiff then relying upon said representations and statements so made to the plaintiff by said H. M. White, believing the same to be true, purchased said lands as charged in the declaration and paid said commissioners the purchase money therefor, and that plaintiff would not have so purchased said lands nor so paid said purchase money therefor if said representations and statements had not been so made to him by said White as aforesaid, and if said plaintiff had not relied upon and believed said statements and representations to be true; that the plaintiff did not know at the time that he so purchased said lands and paid the purchase money therefor that said defendant had cut and removed said timber from said lands as charged in the declaration, and that he did not discover that fact until long after he had purchased said lands and had so paid said purchase money therefor and after said lands had been conveyed to the plaintiff, as charged in the declaration. .

"And the plaintiff says that the said defendant by the indirect ways and means aforesaid obstructed the prosecution of the claims and demands against him set up in the declaration and that this suit was brought within less than five years after the said claim had been assigned to the plaintiff as stated in the declaration and within less than five years after the plaintiff discovered that

the said defendant had cut and removed said timber from said lands, and after the defendant had made the statements and representations to the plaintiff aforesaid.

"And this the defendant is ready to verify."

[6, 7, 8, 9] The replication is unquestionably an instance of double pleading, and as the objection to it was seasonably made in the lower court, the appellate court has to pass upon it, although if the question had been presented for the first time here it would not have called for any consideration by this court. *Stimmel* v. *Benthall*, 108 Va. 141, 60 S. E. 765. In Virginia it is a settled maxim of pleading that only one reply can be made to a special plea. *Ches. & Ohio Ry. Co.* v. *Bank*, 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449; Burks Pl. & Pr. (2nd ed.), page 325, page 920. We infer from the argument of counsel in this court that the learned trial judge, in striking out the first part of the replication, was induced to do so by the further consideration ·that the averment it contained was necessarily inconsistent with the prior pleadings in the case. It is scarcely possible that at the instance of the board of supervisors or of other creditors of the estate of P. A. Forbes the court had juridiction, in the chancery cause, to order a sale of any portion of the public domain of the State, in the manner stated in the declaration, and the two decrees in the record, entered in the chancery cause, sufficiently show that this could not have been the case. This tract of land was no doubt held by Hubard and Moon as commissioners or trustees for the purpose of selling it under the decree of September 2, 1910, in order that the proceeds of sale should be equally divided between the county and the State as preferred creditors of the decedent.

It is also to be noted that in the second paragraph of

the replication, the pleader refers to P. A. Forbes as *the former owner* of the land.

We are of opinion that no error prejudicial to the plaintiff was committed in striking out the portion of the replication referred to.

[10] A trial of the action was had on December 14, 1923, which resulted in a verdict and judgment for the plaintiff. Neither the defendant nor his counsel were present at this trial, and therefore only witnesses for the plaintiff were heard and no defense was made. Subsequently, at the same term of the court, the verdict and judgment were set aside upon the application of the defendant. To the granting of this application the plaintiff excepted and assigns the ruling of the court in that respect as error. It appears that the December term of the court commenced on the 11th day of the month, and when the civil docket was called this case was fixed for trial on the 12th, the following day; on that day counsel for both sides were present prepared to go into the trial, the court having overruled a motion to continue it. The case could not be reached on that day, but it was understood it would be tried at that term of the court as soon as it could be reached. On the 13th it became evident the case could be taken up on the following day, and messages by telephone to the defendant, and by wire to defendant's counsel to that effect were sent. The motion to set aside the verdict was submitted to the court upon affidavits, and no doubt, as is quite usual, upon oral statements by counsel. The court evidently was convinced that the messages to the defendant and his counsel did not reach them until after the 14th. The learned trial judge had knowledge of what took place in court on the 11th and the 12th of December. If under all the circumstances he was of opinion that the defendant had been inad-

vertently denied a trial to which he was entitled, then his ruling was an exercise of judicial discretion on his part which this court does not feel it should interfere with. The assignment of error is, therefore, overruled. It is further shown, in this connection, that the trial court of its own motion reduced the amount of damages found by the jury and gave judgment for the lessened sum. This is assigned as error, but need not be considered, as the action of the court setting aside the verdict altogether is upheld.

The remaining assignment of error is to the action of the court sustaining the demurrer to the plaintiff's replication and rendering final judgment for the defendant. After the court had limited the replication to the facts set out in its second paragraph, the defendant demurred to the replication, the demurrer being in the following language:

"The defendant demurs to the special replication filed by the plaintiff in this action, and for cause of demurrer says that the allegations contained in said special replication could not constitute a reply to the plea of the statute of limitations in this action."

[11, 12] The plaintiff than moved the court "that the defendant be required to further and more specifically state the grounds of the said demurrer in writing." The court overruled this motion. This was properly done. Section 6115 of the Code provides a brief form for a general demurrer to a declaration or other pleading, and further requires that the demurrant shall, on motion of the opposite party, state the grounds of the demurrer specifically. The object of this statute is in the main twofold, that is to prevent reliance being placed upon an undisclosed objection to a mere matter of form, which is capable of amendment, and to prevent the demurrant from presenting, on appeal, grounds for the

demurrer not relied upon before the trial court. Cases involving the application of this statute have arisen almost entirely in instances of a demurrer to the declaration. It is readily understood that at the early stage of the pleading the plaintiff's case should not be challenged by a demurrer, unless the defendant discloses the exact character of all his reasons for his demurrer. In the case here, considering the nature of the special plea, the facts set up in the replication, and the conclusion of the replication to the effect that "the plaintiff says that the said defendant, by the indirect ways and means aforesaid, obstructed the prosecution of the claims and demands against him set up in the declaration," thus in terms relying upon section 5825 of the Code in avoidance of the statute—we are of opinion that the demurrer sufficiently stated its one ground of demurrer and one only, and presented for consideration only the clear cut issue of law, whether the facts stated constituted such an obstruction, within the purview of the statute, as to prevent reliance upon the statute of limitations. Section 5825 provides that when a party by departing from the State, by absconding or concealing himself, "or by any other indirect ways or means," obstructs the prosecution of the right, the time that such obstruction continues shall not be computed as part of the limitation period.

[13] In the case of *Culpeper Bank* v. *Tidewater, etc., Co.,* 119 Va. 73, 89 S. E. 118, the court says (on page 82): "The question then to be considered is whether the Culpeper National Bank, by any indirect way or means, obstructed the prosecution of this suit; if so, then the time such obstruction continues should not be computed as any part of the time in which the said right might or ought to have been presented. It matters not that Smith fraudulently concealed the fact so

as to have prevented the institution of the suit. The sole question is whether or not the Culpeper National Bank has been guilty of such obstruction as is contemplated by section 2933" (Va. Code of 1904). The court then discusses the question briefly and holds that concealment by mere silence is not sufficient, but there must be some trick or contrivance intended to exclude suspicion and to prevent enquiry. "Fraudulent concealment must consist of affirmative acts of misrepresentation. The fraud which relieves the bar of the statute must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action."

In 37 Corpus Juris, page 977, it is said:

"The mere denial of a fact or a falsehood is not itself a fraudulent concealment of a cause of action which will operate to postpone the running of the statute of limitations, the fact being capable of proof irrespective of any admission by the party, although there may be no other evidence at hand than the knowledge of plaintiff himself. It is otherwise, however, where there is no other means of discovering the particular cause of action."

In this case the action is not upon the misrepresentation, and in that event the limitation period may have been one year under the decision in the recent case of *Cover* v. *Critcher*, 143 Va. 357, 130 S. E. 238.

[14] There may no doubt be circumstances under which a denial of the existence of a fact, intentionally made to ward off the prosecution of a right by the plaintiff, should be held to be a fraudulent obstruction to the institution of the suit. A debtor, aware of the fact that a suit is impending against him may keep from his creditor knowledge of facts, which in good faith he should impart to him on enquiry, or which he is under

a duty to disclose. But the facts stated in the replication in the instant case do not bring the reply to the statute within the purview of these principles. At the time the enquiry was made of White no legal relation of debtor and creditor, nor other legal relation, existed between the plaintiff and defendant. The enquiry was not made for any other purpose than to elicit information which might assist Morriss in determining whether he should purchase the property. The character and value of the land was altogether for the intending purchaser to ascertain in any mode he chose to pursue. The tract of land may have been somewhat inaccesible, but it was in the county in which the parties resided, and the usual method for ascertainment of the amount and value of timber upon a tract of land is to go upon it and inspect it. The denial, under the circumstances stated in the pleading, could not have been intended to obstruct and could not have obstructed any right of action vested in the plaintiff. The enquiry and reply were made *diverso intuitu.* There was then no right of action in the plaintiff, nor did he acquire any such right by his purchase and deed. His right to sue arose by virtue of the assignment authorized by the court, evidently because it was impossible to cancel the sale and restore the purchaser to his original position by returning the purchase money, as it had been distributed. The assignment was made eighteen months after the sale, and the representation claimed to have been made by White about the time of sale had no proper bearing upon the right of Morriss to maintain this action as assignee, and has no reasonable relation to the plea of the statute of limitations.

We do not see how the court could have ruled otherwise than to sustain the demurrer, and we perceive no error on its part in so doing.

Therefore the judgment of the lower court will be affirmed.   This court is loath to have the final judgment in a case determined upon a demurrer to one of the pleadings, but it has no other alternative upon this record.   There is no indication in the bill of exceptions that the plaintiff evinced a desire to withdraw the replication, or doubtless the trial court could have allowed him to do so.

[15] In Burks Pl. & Pr. (2nd ed.), page 356, the learned author says:

"If there be a demurrer to some counts of a declaration while issues of fact are pending on other counts, final judgment cannot be entered upon sustaining the demurrer while such issues of fact are pending.   The same rule applies where issues of law and fact are pending on several pleas.   But if the question of law raised by the demurrer goes to the whole merits of the case, final judgment may be entered thereon without trying the other issues."   Instances of necessity for the entry of final judgment in such cases may be found in *Morris* v. *Lyon*, 84 Va. 331, 4 S. E. 734; *Baker* v. *Butterworth,* 119 Va. 402, 89 S. E. 849, L. R. A. 1916F, 1287; *Wood* v. *Carpenter*, 101 U. S. 135, 25 L. Ed. 807.

The judgment is affirmed.

*Affirmed.*