## Richmond

### BLINDER, ROBINSON & COMPANY, INC., ET AL.

### V.

### STATE CORPORATION COMMISSION

Records Nos. 831429, 831430,
831431, 831432 and 831433.

March 9, 1984.

Present: All the Justices.

*William A. Young, Jr. (Richard M. Price; Eric M. Page; Wallerstein, Goode & Dobbins,* on briefs), for appellants. (Records Nos. 831429, 831430, 831431, 831432 and 831433.)

*Joel H. Peck (Lewis S. Minter,* on brief), for appellee. (Records Nos. 831429, 831430, 831431, 831432 and 831433.)

CARRICO, C.J., delivered the opinion of the Court.

These five appeals of right involve findings made and sanctions imposed by the State Corporation Commission in the nature of judgments by default. The dispositive question is whether the Commission erred in refusing to reopen the matter after the default had been declared.

On October 15, 1982, the Commission ordered Blinder, Robinson & Company, Inc., a Denver-based securities dealer, and four of its employees (collectively, the defendants)[1] to appear before the Commission and show cause why they should not be penalized for, and enjoined from, violating the Virginia Securities Act, Code §§ 13.1-501 to -527.01. The orders fixed January 20, 1983, as the date for hearing.

On the scheduled date, neither the defendants nor their counsel appeared. After noting of record this lack of appearance, the Commission proceeded to hear the testimony of Paul Spacek, a broker-dealer examiner for the Commission's Division of Securities and Retail Franchising (Securities Division). Spacek testified that Blinder, Robinson and its agents had failed to register with the Commission and had made eighty-six sales involving forty unregistered securities to fifty-six Virginia customers. This information, Spacek stated, came from "evidence . . . obtained from Blinder, Robinson." Following Spacek's testimony, the Commission declared the defendants "in default by not appearing or responding in any way." The Commission then took the matter under advisement.

On March 1, 1983, the defendants filed a "Petition to Reopen Hearing and to Schedule a Date." The petition alleged that the defendants' Colorado counsel had "understood . . . that the Hearing [scheduled for January 20, 1983] would be continued to a later date" and that, "accordingly, the non-appearance by [the defendants] at the hearing was no fault of the [defendants]." The petition prayed that the matter be reopened and a new date scheduled for the presentation of evidence.

Attached to the defendants' petition was an affidavit signed by Philip E. Lowery, a Colorado attorney who, the affidavit stated, had been engaged to represent Blinder, Robinson "in matters pending before state securities divisions." The affidavit stated further that on December 20, 1982, Lowery "spoke with Taylor Nel-

---

[1] Blinder, Robinson is the appellant in Record No. 831429, Fred Steven Sager in Record No. 831430, Edwin R. Nagel in Record No. 831431, Barry Alan Siskind in Record No. 831432, and William Joseph Lavin in Record No. 831433.

son, Broker/Dealer Examination Coordinator" for the Commission's Securities Division and that he, Lowery, had made notes of the telephone conversation. These notes, the affidavit continued, indicated Lowery's "understanding that Joe Peck, Associate General Counsel for the . . . Commission . . . would extend the Order to Show Cause which had been issued to Blinder, Robinson & Co., Inc. and set for hearing on January 20, 1983."

The Securities Division filed a response to the defendants' petition to reopen. In the response, the Division denied Taylor Nelson had told Lowery that the show-cause hearing would be continued. The defendants then filed an answer to the Division's response. Noting the conflict concerning what was said in the December 20, 1982 telephone conversation between Nelson and Lowery, the defendants asked both that the "Hearing be reopened" and that "Lowery be given the opportunity to testify with regard to whether or not he was advised that the Hearing would be continued."

On May 3, 1983, the Commission entered an order denying the defendants' petition to reopen and their request that Lowery be permitted to testify concerning his telephone conversation with Nelson. On the same day, the Commission also entered orders finding the defendants in violation of the Virginia Securities Act. These orders imposed fines of $25,000 upon Blinder, Robinson and $1,000 upon each of the individual defendants and, in addition, enjoined all the defendants from violating the Act in the future.

On appeal, the defendants contend that U.S. Const. amend. XIV, § 1, Va. Const. art. I, § 11, and Va. Code § 12.1-28 require a hearing before sanctions may be imposed upon a party. The defendants then argue that the refusal of their petition to reopen and of their request to permit Lowery to testify constituted a denial of due process of law. The requirement of due process, the defendants maintain, "outweighs any possible administrative inconvenience placed upon the Commission, especially where there can be no showing that the Commission would be harmed by reopening the hearing."

The defendants argue further that the "Commission's failure to set aside the default judgment was an abuse of discretion." Generally, the defendants maintain, "a reasonable misunderstanding will relieve a party from a default judgment if that misunderstanding is caused by 'excusable neglect.'" They "honestly and

reasonably believed that a continuance had been granted in this case," the defendants submit; hence, their failure to appear was excusable, and the Commission should have given them "the opportunity to present [their] case once the misunderstanding was revealed." At "the very least," the defendants conclude, "the Commission should have heard evidence to substantiate the reasonableness of that misunderstanding."

The defendants state correctly that " 'within the limits of practicability' . . . a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." *Boddie* v. *Connecticut,* 401 U.S. 371, 379 (1971). And, as the defendants point out, this due process right includes "an effective opportunity to defend by confronting any adverse witnesses and by presenting . . . arguments and evidence orally." *Goldberg* v. *Kelly,* 397 U.S. 254, 268 (1970); *VEPCO* v. *Corp. Comm.,* 226 Va. 541, 312 S.E.2d 25 (1984).

It is clear, however, that in the foregoing statement of principles, the key word is "opportunity." In the context of the type of case now under consideration, due process requires only that, before sanctions may be imposed upon a party, the *opportunity* for a hearing must be provided, not that the party must "actually have a hearing on the merits." *Boddie,* 401 U.S. at 378. The failure to appear after due notice, or the unjustifiable violation of some procedural rule affecting the orderly adjudication of cases, may result in a waiver of the hearing required by due process and an entry of judgment by default. *Id.* at 378-79; *Central Operating Co.* v. *Utility Workers of America,* 491 F.2d 245, 251-52 (4th Cir. 1974).

Whether relief from a default should be granted is a question resting in the sound discretion of the trial tribunal. *Morriss* v. *White,* 146 Va. 553, 568-69, 131 S.E. 835, 839 (1926). And where, as here, the basis of the requested relief is excusable neglect, the pivotal question, quoted from the defendants' reply brief, is "the sufficiency of the [defendants'] excuse for failing to appear at the hearing."

In resolving this question, we need not go beyond the affidavit of Philip E. Lowery, attached to the defendants' petition to reopen. We must assume that the defendants set forth in this affidavit their best possible case for relief, and we are willing to accord the affidavit's factual recitations absolute verity. Yet, the affi-

davit does not establish sufficient excuse for the defendants' failure to appear at the January 20, 1983 hearing.

The affidavit states that, on December 20, 1982, Lowery "spoke with Taylor Nelson, Broker/Dealer Examination Coordinator" for the Commission's Securities Division. Thus, the affidavit shows on its face that Nelson was a mere administrative employee of the Commission; there is no indication in the affidavit or anywhere else in the record that Lowery was led to believe that Nelson had any authority to speak for the Commission on the subject of granting a continuance.

The affidavit states further that Lowery took notes of his conversation with Nelson and that these notes indicate Lowery's "understanding that Joe Peck, Associate General Counsel for the . . . Commission . . . would extend the Order to Show Cause which had been . . . set for hearing on January 20, 1983." Thus, the statement concerning a continuance, made by Nelson in the conversation, dealt with something someone else *would* do, an act in futuro by a person over whom Nelson obviously had no control.

■ It is not reasonably conceivable that an attorney, exercising due care for his client's interests, would accept such an equivocal statement from one without any apparent authority and act upon the statement with complete confidence that a binding agreement had been reached concerning a continuance. Neither is it reasonably conceivable that, following his conversation with Nelson, Lowery would fail to contact the Commission before the scheduled hearing date to ascertain whether the matter had in fact been continued. Both these lapses constitute inexcusable neglect amounting to a waiver of "the hearing required by due process." *Boddie,* 401 U.S. at 378. And the fault appears so clearly from Lowery's affidavit that the Commission was fully justified in refusing to reopen the case or to hear Lowery's testimony.

■ The defendants argue, however, that the neglect was Lowery's, not theirs, and that they "should be relieved from judgment because they were not at fault." The difficulty with this argument is that the defendants themselves *were* at fault.

Lowery's affidavit stated that he did not obtain a copy of the Commission's Rules of Practice and Procedure until January 21, 1983, the day after the scheduled hearing date. The affidavit stated further that Lowery was not aware on December 20, 1982, the date of the telephone conversation in question, that "Joe Peck would not have the authority to extend the hearing date for the

Show Cause hearing pursuant to [Lowery's] conversation with Taylor Nelson." Yet, it is a concession in the case that, on November 22, 1982, approximately one month before the Lowery-Nelson conversation, Peck sent a copy of the Commission's rules to George S. Yochmowitz, house counsel for Blinder, Robinson.

Since Lowery did not obtain a copy of the Commission's rules until January 21, 1983, it is obvious that Blinder, Robinson's copy had not been made available to Lowery at the time he talked with Taylor Nelson on December 20, 1982. Had Lowery been given the copy before that time, this whole unfortunate situation could have been averted; Lowery would have known that Commission Rule 6:6 made the obtaining of a continuance a formal matter, not left to the whim of an administrative employee.[2] Hence, Blinder, Robinson's failure to deliver the copy to Lowery contributed to his violation of a Commission rule affecting the orderly adjudication of cases and to the waiver resulting therefrom. *Boddie,* 401 U.S. at 378-79.

Finding no denial of due process or abuse of discretion in the proceedings before the Commission, we will affirm the order denying the defendants' petition to reopen. We will also affirm the several orders penalizing the defendants for, and enjoining them from, violating the Virginia Securities Act.

*Affirmed.*

---

[2] *Postponements.* For cause shown, postponements, continuances and extensions of time will be granted or denied at the discretion of the Commission, except as otherwise provided by law. Except in cases of extreme emergency, requests hereunder must be made at least fourteen (14) days prior to the date set for hearing. In every case in which a postponement or continuance is granted it shall be the obligation of the requesting party to arrange with all other parties for a satisfactory available substitute hearing schedule. Absent the ability of the parties to agree, the Commission will be so advised and a hearing date will be set by the Commission. In either case, the requesting party shall prepare an appropriate draft of order for entry by the Commission, which order shall recite the agreement of the parties, or the absence thereof, and file the same with an additional copy for each counsel of record as prescribed in Rule 5:13. Following entry, an attested copy of the order shall be served by the Clerk on each counsel of record.