# Richmond

LEWIS TRUCKING CORPORATION AND MARVIN LEWIS V. COMMON-
WEALTH OF VIRGINIA.

April 25, 1966.

Record No. 6194.

Present, All the Justices.

William King Mapp (George Walter Mapp, Jr., on brief), for the appellants.

D. Gardiner Tyler, Assistant Attorney General and A. R. Woodroff, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

On October 29, 1964, the State Corporation Commission [Commission] issued a rule against Lewis Trucking Corporation, a Delaware corporation, and Marvin Lewis, a citizen and resident of Virginia [defendants] to appear on November 18, 1964, and show cause, if any, why "ten classification plates" issued under § 56-304 of the Code of Virginia to Lewis Trucking Corporation "for use on motor vehicles displaying Virginia license plates," and operated by "Marvin Lewis, a citizen of Virginia, as lessee, in interstate commerce into and out of Virginia, without displaying license plates issued by the Division of Motor Vehicles of Virginia," should not be surrendered for cancellation; and "why both defendants should not be subjected to the penalties provided by § 56-304.12 of the Code of Virginia." Copies of the rule were duly served on defendants and, at their request, the hearing thereon was continued until a later date.

On November 25, 1964, the Commonwealth of Virginia, by and through its Attorney General, intervened in the proceeding and filed a motion for judgment against the defendants in the sum of $6,608.00, the amount of registration and license fees required by Code, § 46.1-154, 1964 Cum. Supp., on the ten motor vehicles, for which they had obtained ten classification plates, but no Virginia license tags. Copies of the motion were duly served on the defendants.

The rule came on to be heard on December 18, 1964. Defendants filed no answer or response to the rule or to the motion for judg-

ment. However, they appeared by counsel and moved to dismiss the rule on the ground that "It was contrary to the Constitution of the U. S. and to the Constitution of Virginia." The motion was overruled. Thereupon the matter came on to be heard on the evidence. During the hearing, defendants claimed that they were relieved from obtaining Virginia license tags by reason of a reciprocity agreement between Virginia and Delaware.

In its written opinion, the Commission found "as a fact that Marvin Lewis is not only the operator of the vehicles; but he is the owner of them, notwithstanding the formal transfer of paper title to his paper corporation." It held that it had "no occasion to consider the question of reciprocity, because it is plain that Mr. Lewis' corporate charter [the Lewis Trucking Corporation] is a sham and an illusion;" but that "since Lewis was entirely frank in his testimony, we have decided not to impose on him the criminal penalty provided for in § 56-304.12." 1964 Cum. Supp., Acts 1954, Chapter 341.

The Commission found that during the tax year commencing April 15, 1964, the defendants operated on the highways of this State ten motor vehicles that should have been, but were not, registered with and licensed by the Division of Motor Vehicles. Accordingly, it adjudged and ordered that the Commonwealth recover of the defendants the sum of $6,608.00, license fees, with interest. Code, § 46.1-154, 1964 Cum. Supp.

It is further ordered that the exemption cards and classification plates issued to the defendant, Lewis Trucking Corporation, be suspended and surrendered, unless the judgment be paid to the Division of Motor Vehicles, or the Treasurer of Virginia, on or before March 1, 1965; that no exemption cards, classification plates, or other evidence of authority to operate said motor vehicles on the highways of Virginia be issued by the Commission to the defendants, or either of them, until the judgment be paid; and that a writ of *fieri facias* issue, if the judgment be not paid on or before March 1, 1965. Attested copies of the judgment were forwarded to counsel for parties to the cause.

Upon application of the defendants, we awarded them an appeal of right. Constitution of Virginia, § 156 (d).

The principal contentions of the defendants are: (1) that Code, § 56-304.12 violates both the Constitution of the State of Virginia and that of the United States; and (2) that the Commission erred in holding that a reciprocity agreement between Virginia and Delaware

with respect to motor vehicles was not applicable to them in this proceeding.

The facts are without dispute. It is admitted that Marvin Lewis is a citizen and resident of Virginia, residing at Talsey, in Accomac County, where he operates a grocery store and a trucking business. He obtained a charter for the Lewis Trucking Corporation in Delaware. Lewis testified that this is a family corporation, of which he is president. He did not know whether it had ever issued any shares of stock, nor how many shares he owned. The principal office of the corporation, according to its charter, is the office of the Attorney General of Delaware, at 225 South State Street, Dover, Delaware. There is no evidence that the corporation transacted any business there, or in any other place in Delaware. Lewis directs the operation of the trucking business from his residence and business office in Tasley, Virginia. Equipment used in his trucking business consists, in part, of nine tractors and one truck, registered in Delaware, in the name of Lewis Trucking Corporation, and ten trailers registered in Virginia, in the name of Marvin Lewis, the owner. The insurance policy covering the tractors and trailers listed Tasley, Virginia, as the address of the corporation. The nine tractors and one truck were leased to Lewis by Lewis Trucking Corporation.

In March, 1964, Lewis filed an application with the Commission for "classification plates" and exemption cards for the registration of nine tractors and one truck. He listed Lewis Trucking Corporation as owner of the vehicles, its address as Dover, Delaware, and himself as operator of the vehicles and his address as Talsey, Virginia. The Commission issued classification plates in accordance with Code, § 56-304*, 1958 Repl. Vol., for "interstate operators only." Classification plates are issued only for vehicles operated for compensation, and required by law to display Virginia license tags.

In September, 1964, Lewis filed an application for "identification markers" for the same vehicles. He said: "I figured the ones that had been issued were improper." Identification markers are issued to ve-

---

* "§ 56-304. No person shall operate or cause to be operated for compensation on any highway in this State any self-propelled motor vehicle that is required by law to display license plates issued by the Division of Motor Vehicles unless there has been issued by the Commission to the owner or the operator of the vehicle a warrant or an exemption card and a classification plate for each vehicle so operated.

"* * * A classification plate shall be issued for each vehicle, indicating the purpose for which the vehicle may lawfully be operated, and having on it the same number that appears on the warrant or exemption card issued for the vehicle. * * *."

hicles operated for compensation; but which are not required to purchase Virginia license tags from the Division of Motor Vehicles of Virginia. § 56-304.1, 1964 Cum. Supp. The Commission denied his application for identification markers on the ground that his vehicles were already properly classified and registered in its office for the purpose for which they were being operated.

Officers of the State Police Force observed the nine tractors and truck above mentioned, each without a Virginia license tag, and each pulling a trailer registered and licensed in Virginia in the name of Marvin Lewis, over the highways of Accomac County, Virginia, during several months of 1964. As a result of their reports and further investigation by the Commission, the rule in this case was issued.

The fees for Virginia license plates on tractors are much larger than Delaware license plates for tractors. The Virginia license plate fees on trailers are much smaller than similar fees in Delaware. With this in mind, Lewis said he consulted an attorney, who, he said, told him that he could lawfully operate in Virginia on Delaware tractor plates and Virginia trailer plates. He had his attorney procure a Delaware charter for Lewis Trucking Corporation, and thereafter operated his tractors in Virginia with Delaware license plates issued to the corporation, and his trailers with Virginia license plates issued to him. He says in his brief that "The Corporation was formed and intended to avoid the almost prohibitive Virginia license tax," by "legal means."

Lewis operates the vehicles for compensation solely in interstate commerce. Accordingly, upon receiving the application of Lewis on behalf of his corporation, the Commission issued to the corporation exemption cards and classification plates. The exemption cards showed that Lewis was the operator of the vehicles, and the classification plates showed that the vehicles could not be used in intrastate commerce. Although vehicles operated solely in interstate commerce are not expressly exempt from the state regulation under Virginia Code, § 56-274, they are exempt from such regulation by the commerce clause of the United States Constitution, but not from state taxation.

A copy of a reciprocity agreement between Virginia and Delaware with respect to motor vehicles was presented in evidence. That agreement, in its first paragraph, provides that when "motor vehicles have been licensed in full compliance with the laws of their home state, and not licensed in any other State, then such motor vehicles shall be exempt from paying any license plate tax to the

reciprocating State," subject to certain limitations not involved here.

Section 10 provides that the privileges of the agreement "shall apply to those who retain their status as non-residents with respect to the reciprocating State, and are licensed in their home State only."

I

Defendants argue that Code, § 56-304.12, Acts 1954, Chapter 341, violates several sections of the Virginia Constitution. The Code section reads:

"§ 56-304.12. Offenses punishable by the State Corporation Commission.—The Commission may, by judgment entered after a hearing on notice duly served on the defendant not less than ten days before the date of the hearing, if it be proved that the defendant made any misrepresentation of a material fact to obtain a warrant, exemption card or registration card, has made any improper use of any warrant, exemption card, registration card, classification plate, identification marker or identifying number, is found to be operating contrary to the provisions of § 56-304.6:1 or 56-304.6:2, has violated any law of this State regulating the operation of motor vehicles for compensation on the highways of this State, has failed to make any report required by the Commission, has failed to pay any fee or tax properly assessed against him or has failed to comply with any lawful order, rule or regulation of the Commission, impose a penalty, not exceeding one thousand dollars, which shall be collectible by the process of the Commission as provided by law.

"In addition to imposing such penalty, or without imposing such penalty, the Commission may, in any such case, suspend or revoke any warrant, exemption card, registration card, classification plate, identification marker or identifying number issued pursuant to this article.

"If, in any such case, it appears that the defendant owes any fee or tax to the Commonwealth, the Commission shall enter judgment therefor. (1954, c. 341; 1964, c. 572.)"

The major objection seems to be to the last paragraph of that section, providing that the Commission may enter judgment upon its finding. Defendants contend that Section 156 of the Constitution of Virginia does not either by express authority, or by inference, empower the Commission to enter a judgment for any tax that "appears" to be owing the Commonwealth.

Section 156 of the Constitution outlines, in great detail, the powers,

duties and method of procedure for the State Corporation Commission. It has long been settled in this jurisdiction that our Constitution is not a grant of power; but a restriction of powers otherwise practically unlimited. *Morgan* v. *Commonwealth*, 168 Va. 731, 191 S. E. 791. Consequently, the General Assembly of Virginia may enact any law not prohibited by the Constitution. *Supervisors* v. *Randolph*, 89 Va. 614 16 S. E. 722; *Lipscomb* v. *Nuckols* 161 Va. 936 172 S. E. 886; *Railway Express Agency, Inc.* v. *Commonwealth*, 199 Va. 589, 100 S. E. 2d 785, affirmed 358 U. S. 434, 79 S. Ct. 411, 3 L. ed. 2d 450; and *City of Portsmouth* v. *City of Chesapeake*, 205 Va. 259, 136 S. E. 2d 817.

Section 156 is not inclusive of all the powers and duties of the Commission; it does not prohibit or limit the power of the legislature to impose additional duties on the Commission in the performance of its duties.

The powers of the General Assembly are broad and plenary, and its acts are presumed to be constitutional. The rule is well stated in 4 Mich. Jur., Constitutional Law, § 31, page 114, as follows:

"As the state legislature is the supreme law-making body within the state, it can enact any law not prohibited by state or federal constitution. It functions under no grant of power. It can do those things which are not forbidden by the state or federal constitutions, or which are not repugnant to those elementary social rights upon which society, as we know it, rests. All laws are presumed to be constitutional and must, wherever there is doubt, be sustained, but there must be some room for honest doubt, arising out of the law itself as written. There must be some substance in the doubt; a shadow is not enough." (Cases cited.)

Defendants next argue that § 56-304.12 violates § 52 of the Constitution, in that it embraces more than one object, and does not refer to authority to grant civil judgments. The title to Chapter 341, Acts of 1954, in which the above section is included, reads, in part:

"An Act * * * providing for the registration and taxation of certain carriers, fees, road taxes, agents for service of process, prohibiting certain acts and providing penalties for violations and the enforcement thereof; * * *."

The above provision in the title of the Act is sufficiently broad and comprehensive to include the registration of carriers, the taxation of them, the making of regulations concerning the conduct of the carriers, the enforcement of the regulations, and the imposition of penalties for violation of such regulations, all in the furtherance of the

objects and purposes of the statute itself. Enforcement would be difficult in the absence of the power to impose penalties. The title fairly states the general subject covered in the body of the Act. *Iverson Brown's Case*, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110; *Commonwealth* v. *Dodson*, 176 Va. 281, 305, 11 S. E. 2d 120; *Whitlock* v. *Hawkins*, 105 Va. 242, 53 S. E. 401.

The provisions of the 1954 Act are germane, relative and appropriate to its title, and to the primary objectives of § 156 of the Constitution, relative to the jurisdiction, powers, duties and method of procedure of the State Corporation Commission.

Nor is it a valid argument that § 56-304.12, Code of Virginia, violates Section 39 of the Virginia Constitution. Defendants do not press their contention that the Statute violates the Federal Constitution. Section 39 of the Virginia Constitution reads as follows:

*"Except as hereinafter provided,* the legislative, executive and judicial departments shall be separate and distinct so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time." (Emphasis added.)

Defendants admit in their brief "that necessarily there must be some overlapping" in the duties and powers of the several departments of the government; that the State Corporation Commission is "the proper authority to regulate the licensing of motor vehicles;" and that in order to be effective, the Commission "must necessarily have the power and authority to assess fines and penalties." This admission and the language "except as hereinafter provided," in the beginning of Section 39 of the Constitution, answer the contention of defendants. The exception in the statute is manifestly for the purpose of granting certain agencies of the government necessary legislative, executive and judicial powers to perform the duties assigned to them. Section 156 (c) of the Constitution authorizes and empowers the Commission, sitting as a court, to impose "such fines or other penalties as may be prescribed by this Constitution or by law," as to the matters mentioned in that section. Cf. *Western Union* v. *Commonwealth*, 204 Va. 421, 132 S. E. 2d 407.

Section 56-304.12 does not deprive a defendant of opportunity to be heard by the courts. The defendants were given full opportunity to present, and did present their defenses, after due notice and at an open hearing, and have been afforded this appeal from the judgment entered against them.

Chapter 341, Acts 1954, pages 433 *et seq.*, Code, §§ 56-279.1 and

56-304.1 through 56-304.12, plainly fixes the guidelines and standards to be followed by the Commission, and which were followed in this proceeding. In fixing the amount required by general law as the price for the license plate tags, which should have been purchased by the defendant, the Commission imposed the fee provided by § 46.1-154, 1964 Cum. Supp., and properly directed such fees be paid to the Division of Motor Vehicles. No fine was imposed.

The word "appears" in the last paragraph of the section, considered in the light of the provisions of the Act, is merely synonymous with "finds" or "determines." It has the connotation of determination after the hearing of evidence.

We find § 56-304.12 not violative of either the State or Federal Constitution.

## II

We agree with the Commission that the reciprocity agreement between Virginia and Delaware has no application here.

It is clear that Lewis is not only the operator of the vehicles involved, but is the owner of them; that Lewis Trucking Corporation was but his *alter ego*, alias, stooge or dummy for the purpose of avoiding the payment of Virginia license taxes on the motor vehicles; and that the transfer of title to the vehicles to his paper corporation was merely a device or sham to hide his ownership. It is well settled that such a corporate transfer cannot be used as a method of nullifying established policies of law.

In *Beale v. Kappa Alpha Order*, 192 Va. 382, 399, 64 S. E. 2d 789, we approved the following statement:

" '* * * Just when a corporation will be regarded as the adjunct, creature, instrumentality, device, stooge, or dummy of another corporation is usually held to be a question of fact in each case. * * *; and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other.' " *Pepper v. Dixie Splint Coal Co.*, 165 Va. 179, 181 S. E. 406; *Moline Properties v. Commissioner of Internal Revenue*, 319 U. S. 436, 439, 87 L. ed 1499, 63 S. Ct. 1132; *Higgins v. Smith*, 308 U. S. 473, 474, 84 L. ed 406, 60 S. Ct. 355.

In 4 Mich. Jur., Corporations, § 5, at page 559, the rule is aptly stated:

"Notwithstanding, when the facts justify it, the courts will look

beyond the mere corporate entity to the persons who compose the corporation. This rule is applicable wherever reason and justice require it although the acts of the parties amount to constructive fraud only, the rule not being limited to cases where they have been guilty of actual fraud and criminal intent. While 'the legal conception of a corporation distinct from its members has often been regarded as a mere fiction adopted by the law for the purpose of enabling natural persons to transact business in this peculiar way, whenever it is necessary to do so, the law will look behind the corporate body and recognize the members and disregard the fiction.'

"In the case of the one-man corporation or the corporation in which all stock is owned by a single individual except a few shares necessary to qualify directors, courts have shown great liberality in lifting the veil of the corporate entity and holding the sole shareholder and the corporation to be one and the same. Where a corporation is so organized and controlled as to become the mere agent or instrumentality of another corporation, the courts have laid down the rule that the doctrine of corporate separateness may be ignored."

We find no merit in any remaining assignments of error. Here, the facts, the circumstances, and the applicable law justify the Commission's finding and judgment.

The judgment of the State Corporation Commission is, therefore, affirmed.

*Affirmed.*