## Richmond

COMMONWEALTH OF VIRGINIA v. GREEN MOTOR LINES, INCORPORATED.

June 12, 1967.

Record No. 6424.

Present, All the Justices.

*D. Gardiner Tyler, Assistant Attorney General; A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for plaintiff in error.*

*J. Vaughan Gary (Shewmake & Gary, on brief), for defendant in error.*

I'ANSON, J., delivered the opinion of the court.

On March 9, 1965, Green Motor Lines, Inc. (Green), filed in the court below an application under Code § 58-1130, as amended, for the correction of erroneous assessments of motor vehicle license "taxes" for 1964 and for a refund of $5,086, the amount paid. After

hearing evidence, the trial court entered judgment for Green in the amount of the refund claimed, and the Commonwealth is here on a writ of error to the judgment.

In the view we take of the case it is necessary that we consider only one of the Commonwealth's contentions, that the judgment was contrary to the law and the evidence.

The evidence shows that in the early 1950's Green began intrastate operations in Virginia as a contract carrier for compensation under a permit from the State Corporation Commission (Commission). It later expanded its operations to Florida, where it was engaged in transporting citrus fruits both intrastate and interstate.

Subsequently Green was advised by counsel and a member of the Commission to buy Florida license plates for the vehicles used in the Florida intrastate operations and interstate exempt commodities operations that originated in Florida. In 1958 the corporation was domesticated in Florida and obtained Florida license plates for two of its tractors operated there. Green then submitted to the Commission an affidavit by its president establishing its Florida base, and the Commission issued identification markers which authorized Green's two tractors to operate through Virginia without having to display Virginia license plates. Five additional tractors were later added to its Florida fleet, for which Virginia identification markers were obtained. Although all seven tractors were titled in Virginia, Florida issued license plates on the basis of Florida law dealing with "non-negotiable titles".

From time to time thereafter, the Virginia State Police arrested drivers of the Green tractors for failure to display Virginia license plates. Before 1964 all the cases were dismissed, apparently on the theory that since all the tractors were based in Florida, the corporation's vehicles were not required to have Virginia license plates under the "Multistate Reciprocal Agreement" to which Florida and Virginia were parties.

In mid-1963 the Commission forwarded to the Division of Motor Vehicles and State Police a list of trucking companies, including Green Motor Lines, Inc., as to which there was a question of the validity of the then current registration.

In November 1963, C. H. Moore, an investigator for the State Police Department, investigated Green's operations at the Orlando, Florida, address shown as its principal place of business on the affidavit filed by its president. Sometime in January 1964, Moore reviewed his report with Earl Green, president of the corporation, and its

counsel. He advised them that the corporation was required to obtain registration and license plates for the seven vehicles operating on the Virginia highways, and that the police would issue summonses and arrest the operators each time they found in this State any of its vehicles which did not display Virginia license plates.

Counsel for the corporation, after discussing the problem with Colonel Woodson, superintendent of the State Police, advised the corporation to buy Virginia license plates for the seven tractors for the period commencing April 1, 1964. On March 18, 1964, the corporation purchased Virginia license plates for six of the tractors, and on April 14 license plates were obtained for the seventh vehicle.

After the license plates were purchased and displayed, the police arrested one of Green's drivers on the ground that vehicles with Virginia license plates must also have classification plates, rather than identification markers, pursuant to the provisions of Code § 56-304.[1] Earl Green, as president of the corporation, then filed applications on the printed forms supplied by the Commission and purchased classification plates for the seven tractors which authorized Green to operate both intrastate and interstate. The application forms contained blocks to be checked for the type of authority requested. Green checked the block for authority to operate as a contract carrier but he did not check the block which would have limited the corporation's authority to "interstate only." The classification plates superseded the identification markers issued in 1963, which expired on June 30, 1964.

[1] Code § 56-304.1, which requires registration cards and identification markers for tractors and other vehicles not required by law to display license plates issued by the Division of Motor Vehicles, was amended, effective July 1, 1964, by the addition of the following langauge:

"The Commission's decision that a vehicle is or is not required by law to display a license plate issued by the Division of Motor Vehicles shall be binding on the Division and on the trial courts." Code of 1950, 1959 Repl. Vol., 1966 Cum. Supp.

---

1. § 56-304. "No person shall operate or cause to be operated for compensation on any highway in this State any self-propelled motor vehicle that is required by law to display license plates issued by the Division of Motor Vehicles unless there has been isued by the Commission to the owner or the operator of the vehicle a warrant or an exemption card and a classification plate for each vehicle so operated.

"* * * A classification plate shall be issued for each vehicle indicating the purpose for which the vehicle may lawfully be operated, and having on it the same number that appears on the warrant or exemption card issued for the vehicle. * * *"

Counsel for the Commission testified that prior to the amendment the Commission's decision as to whether or not a vehicle was required by law to display plates issued by the Division of Motor Vehicles was not binding on the Division.

In September 1964, Douglas Troland, investigator with the Commission enforcement division, began an investigation of Green's Florida operations. As a result of his investigation, F. R. Greenwood, assistant director of motor transportation for the Commission, on October 29, 1964, wrote to the Commissioner of the Division of Motor Vehicles, with a copy to the State Police Department, concerning the Commission's investigation. According to the letter, Green Motor Lines, Inc., was a Virginia corporation domesticated in Florida, had intrastate rights in Florida, and the seven vehicles involved were based in Florida. The letter said: "Upon these facts, the Commission * * * finds that Green Motor Lines, Inc., is entitled to have seven units of its equipment licensed by the State of Florida and all other equipment licensed in the State of Virginia." The letter concluded, "As long as this operation remains the same, this corporation may be eliminated from the 'Suspect List' as of this date."

Greenwood testified that since the Commission had been issuing identification markers to the corporation for several years, the conditions revealed by the October 1964 investigation of the Florida operations also existed in April 1964. The president of the corporation also testified that its Florida operations had not changed between January 1958 and October 1964.

After the amendment of Code § 56-304.1, and the Commission's investigation of the Florida operations, Green did not request the Commission to cancel the classification plates and issue identification markers in their stead. Furthermore, the Commission took no action concerning the classification plates, which remained in force throughout the 1964 registration and license period.

We agree with the Commonwealth that the judgment was contrary to the law and the evidence.

[2] The classification certificates applied for and issued by the Commission authorized Green to operate the seven tractors intrastate as well as interstate in Virginia. Even if it be conceded that Green was coerced by the threat of arrest of its drivers into purchasing Virginia license plates and classification plates, required under Code § 56-304, Green could have checked the block on the applications for "interstate only" if it was his intention to so limit the operations. He was not coerced into obtaining the kind of classification plates

which authorized intrastate operations in Virginia. Moreover, there is no evidence in the record that Green did not exercise the privilege of operating the seven vehicles intrastate during the 1964 license period. Furthermore, after the amendment to Code § 56-304.1 became effective on July 1, 1964, Green did not apply to the Commission to change its classification plates to confine its authorization to "interstate only" or request the Commission to issue identification markers. See, *Trucking Corporation* v. *Commonwealth*, 207 Va. 23, 147 S. E. 2d 747 (1966).

For the reasons stated, the judgment of the court below is reversed and final judgment is here entered for the Commonwealth.

*Reversed and final judgment.*