COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Annunziata
Argued at Alexandria, Virginia


KENNETH R. FOX

v.        Record No. 0721-97-4

WENDY R. FOX
                                    MEMORANDUM OPINION[*] BY
and                                 JUDGE JERE M. H. WILLIS, JR.
                                         MARCH 17, 1998
KENNETH R. FOX

v.        Record No. 1094-97-4

WENDY R. FOX


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Benjamin N. A. Kendrick, Judge

            Steven M. Garver (Cheryl G. Rice; Law Offices
            of Steven M. Garver, on briefs), for
            appellant.

            Stephen A. Friedman (Denman A. Rucker;
            Joseph, Greenwald & Laake, P.A.; Rucker &
            Rucker, on brief), for appellee.


     In these consolidated appeals from a final decree granting

his wife, Wendy R. Fox, a divorce, Dr. Kenneth R. Fox contends

that the trial court erred (1) by denying him due process of law,

(2) by proceeding against him without proper service, (3) in

determining child support, (4) in determining spousal support,

(5) in determining custody and visitation, (6) in classifying

marital assets and entering a monetary award thereon, (7) by

exercising jurisdiction over non-parties, (8) by awarding

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

attorneys' fees and costs, (9) by entering and amending a writ of ne exeat, and (10) by failing to grant a recusal motion. We affirm the judgment of the trial court.

On appeal, we review the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the party prevailing below. Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988).

The parties were married on November 29, 1975. They have two minor children. On February 2, 1996, Dr. Fox filed in the trial court a bill of complaint for divorce. On February 21, 1996, Ms. Fox filed an answer and cross-bill. On April 9, 1997, the trial court dismissed Dr. Fox's bill of complaint because of his refusal to comply with discovery requests and to abide by the court's orders. The trial court granted Ms. Fox a divorce on the ground of cruelty. The final decree, inter alia: (1) awarded Ms. Fox custody of the parties' children; (2) continued a protective order prohibiting Dr. Fox from being in the vicinity or presence of Ms. Fox and the parties' children; (3) reserved jurisdiction to award Ms. Fox spousal support; (4) ordered Dr. Fox to pay child support of $7,050 per month; (5) awarded a lump sum monetary award to Ms. Fox in the amount of $1,450,000; and (6) found Dr. Fox in contempt for violating the trial court's orders to pay child support, spousal support, and mortgage and insurance payments on the marital residence. The trial court ordered Dr. Fox to pay Ms. Fox's attorneys' fees and costs.

## I. DUE PROCESS

Dr. Fox raises numerous contentions that the trial court denied him due process of law under the Virginia and United States Constitutions. He argues that the trial court committed reversible error when it refused to allow his attorney: (1) to file or argue motions or pleadings; (2) to cross-examine witnesses; (3) to present evidence or proffer testimony; and (4) to make objections.

### A. Background

At a hearing conducted on March 26, 1996, the trial court ordered Dr. Fox to pay monthly child support in the amount of $2,149, monthly spousal support in the amount of $5,440, and the mortgage and insurance payments on the marital residence. These rulings were memorialized in an order entered on May 3, 1996.

On May 9, 1996, the trial court issued a rule against Dr. Fox to show cause why he should not be held in contempt for his failure to pay spousal support, pursuant to its March 26 rulings.

At a hearing conducted on May 31, 1996, the trial court ordered Dr. Fox to comply with Ms. Fox's requests for discovery. That ruling was memorialized in an order entered on June 3, 1996. On July 19, 1996, the trial court ordered Dr. Fox to provide Ms. Fox with an accounting of the parties' children's trusts by July 22, 1996. The trial court also ordered Dr. Fox to respond to Ms. Fox's request for documents by August 5, 1996. Dr. Fox never produced these documents.

On August 16, 1996, Ms. Fox testified that Dr. Fox had failed: (1) to pay spousal support, (2) to provide an accounting of the parties' children's trusts, (3) to produce documents pursuant to discovery, and (4) to pay attorneys' fees, as ordered by the trial court. The trial court ordered "[t]hat Kenneth Fox present himself on the next court date for the purpose of having Kenneth Fox explain to the Court why he should not be incarcerated for his failure to pay spousal support as ordered." Dr. Fox failed to appear.

On August 27, 1996, the trial court issued a rule against Dr. Fox to show cause why he should not be held in contempt for violating the orders of the trial court and ordered him to appear in person before the trial court on September 6, 1996. Dr. Fox did not appear.

On September 6, 1996, the trial court entered an order providing that Dr. Fox "shall not file any motions or pleadings in this Court until such time as he personally appears before this Court." The trial court issued an alias rule against Dr. Fox to appear before the trial court on September 20, 1996, to show cause why he should not be held in contempt for violating the trial court's orders. Because Dr. Fox did not appear, the trial court did not permit Dr. Fox's counsel to cross-examine a witness. However, the trial court permitted Dr. Fox's counsel to offer argument and to state his objections to the orders.

Because Dr. Fox did not appear on September 20, 1996, the

trial court issued a second alias rule to show cause against Dr. Fox, ordering him to appear on October 4, 1996. Counsel for Dr. Fox objected and noted his exception to this order.

The October 4, 1996 hearing was continued to October 10, 1996. Dr. Fox did not appear. At that hearing, the trial court granted custody of the parties' children to Ms. Fox, enjoined Dr. Fox from sending correspondence to the children at their school, and extended a protective order originally issued by the juvenile and domestic relations court. In response to Dr. Fox's counsel's attempt to file certain discovery documents, the following conversation ensued:

> THE COURT: Dr. Fox has a history of utter total disrespect and contempt for this Court and its orders. That's why this Court took the position that he could not – because of his track record, he could not file anything until he came before this Court and answered, in person, as to why he did or didn't do the things that are alleged that have been the basis for this Court's order and the rule to show cause.
>
>      \*      \*      \*      \*      \*      \*      \*
>
> Dr. Fox is getting you to do the things that he can't do. It's a classic end run. Why doesn't Dr. Fox show up?
>
> [DR. FOX'S COUNSEL]: Well, I have told Dr. Fox that he has an obligation to appear.

On November 1, 1996, the trial court suspended Dr. Fox's continuing obligation to pay spousal support and increased child support by a like amount, to $7,589. The trial court issued a capias for Dr. Fox to show cause why he should not be held in contempt for his refusal to comply with the trial court's orders.

By its order of October 10, 1996, the trial court set November 4, 1996, as the date for the deposition of Dr. Fox and for the production of documents. On November 4, 1996, neither Dr. Fox nor his counsel appeared, and no documents were produced.

On November 15, 1996, the trial court granted Ms. Fox's motion for judgment in the amount of $24,979 for spousal support arrearages for the period between June 1, 1996 and October 18, 1996. Pursuant to its ruling at the November 1, 1996 hearing, the trial court also entered an order requiring The Scudder Funds and Signet Bank to provide statements indicating any financial assets held in trust for the parties' children. Counsel for Dr. Fox stated their objections at this hearing and noted their exceptions to the orders.

On February 7, 1997, the trial court conducted a hearing on Ms. Fox's motion for a writ of ne exeat. Dr. Fox did not appear, and his counsel was not permitted to participate. The trial court granted the writ, finding that sufficient cause existed to restrain the departure of Dr. Fox from the trial court's jurisdiction.

On March 7, 1997, March 21, 1997 and April 5, 1997, the

trial court issued orders requesting information from Dr. Fox and non-parties concerning the identification and valuation of marital property.

On April 7, 1997, the trial court conducted an ore tenus hearing on the matter of the parties' divorce. Because Dr. Fox failed to appear, his counsel was not permitted to participate in the proceedings. Five witnesses, including Ms. Fox, presented testimony on the grounds for divorce. By agreement of counsel, the trial court heard testimony by proffer on the nature, identity and value of the marital assets.

On April 9, 1997, Ms. Fox mailed and sent by facsimile to all counsel of record a proposed "Findings of Fact, Conclusions of Law, Judgment of Absolute Divorce and Monetary Award." The trial court entered the final decree of divorce that day.

B.

Dr. Fox contends that the trial court unconstitutionally denied him due process. U. S. Const. amends. V, XIV; Va. Const. art. I, § 11. After reviewing the record, we hold that the trial court's imposition of the non-participation sanction against Dr. Fox comports with fundamental fairness and is consistent with due process of law.

"Notice and opportunity to be heard are fundamental requirements of due process of law." Lockhart v. Baxter, 12 Va. App. 600, 604, 405 S.E.2d 434, 437 (1991). Where a party has the opportunity to present testimony, but chooses not to do so, there

is no denial of due process.  Venable v. Venable, 2 Va. App. 178, 182, 342 S.E.2d 646, 649 (1986).

We find no error in the trial court's requiring Dr. Fox to appear personally prior to permitting him to proceed further. Dr. Fox asks for relief incompatible with justice.  He seeks to wield the trial court's sword and shield to prosecute his claims, while simultaneously engaging in a pattern of contumacious behavior that both insults the dignity of the trial court and deprives Ms. Fox of her opportunity to fully and effectively pursue the litigation.

> Courts are invested with the power, and charged with the duty, of enforcing their decrees.  Such decrees are the mandates of the law, and courts must have the power of enforcing them, if organized society is to be maintained.

Branch v. Branch, 144 Va. 244, 251-52, 132 S.E. 303, 305-06 (1926).

The trial court did not prevent Dr. Fox from cross-examining witnesses, presenting evidence, making objections, or from arguing and filing motions, pleadings and discovery.  He was afforded ample notice and opportunity to do all of these things. See Blinder, Robinson & Co., Inc. v. State Corp. Comm'n, 227 Va. 24, 313 S.E.2d 652 (1984).  Instead, he deliberately and willfully elected to ignore the trial court's repeated commands that he answer for his refusal to pay support and that he comply with discovery orders.  Thus, he elected not to participate in the proceedings.

Dr. Fox held the proverbial keys for his "release" from the sanction of the trial court. That he chose not to avail himself of the means for his release does not vindicate his claim on appeal that the results were not to his liking. See Rule 4:12(b)(2) (sanctions for failing to make discovery); Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990) (trial court has broad discretion in determining what sanctions will be imposed upon litigant who fails to respond timely to discovery). We find no denial of due process in the proceedings.

## II. SERVICE OF PROCESS

Dr. Fox contends that service upon him of the second alias rule to show cause was improper. Thus, he contends that the trial court erred in subsequently issuing a capias for him.

On August 27, 1996, the trial court issued a rule to show cause against Dr. Fox, and on September 6, 1996, it issued an alias rule. When Dr. Fox failed to appear in obedience to either rule, the trial court issued a second alias rule. A private server served the second alias rule on Dr. Fox personally in Maryland. Dr. Fox argues that this service was invalid because the certificate of return, while notarized, does not contain the server's signature. He also argues that service outside of the Commonwealth is insufficient to confer in personam jurisdiction in contempt proceedings. The trial court found that Dr. Fox had actual notice of the hearing noticed by the second alias rule, but failed to appear.

We need not address the validity of the service of the second alias rule. Dr. Fox did not appear, and the trial court did not proceed upon that rule. The trial court issued a capias, commanding the sheriff to seize Dr. Fox, if he was found within the sheriff's bailiwick, and to bring him before the trial court to show cause why he should not be held in contempt for failing to comply with the trial court's orders. The capias was grounded upon Dr. Fox's refusal to comply with the trial court's orders. It was not based upon the validity of the second alias rule. Accordingly, we find no error in the issuance of the capias.

### III.  CHILD SUPPORT

Dr. Fox contends that the trial court abused its discretion in deviating from the presumptive guideline amounts specified in Code § 20-108.2 in determining *pendente lite* and permanent child support.

> "Code § 20-107.2(2) vests discretion in the trial court in awarding child support and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence."  A rebuttable presumption exists that the amount derived from the guidelines, Code § 20-108.2, is correct.  Code § 20-108.1(B).  "Once the presumptive amount is determined, the trial court may deviate . . . if such deviation is justified by factors recognized in Code §§ 20-108.1 and 20-107.2."  "Whenever a child support award varies from the guidelines, Code § 20-108.2(A) requires the trial court to make written findings of fact . . . explaining why one or more of these [Code §§ 20-108.1 and 20-107.2] factors would make it 'unjust and inappropriate' to apply the guidelines to the case."

<u>Auman v. Auman</u>, 21 Va. App. 275, 277, 464 S.E.2d 154, 155-56 (1995) (citations omitted).

On May 3, 1996, the trial court awarded <u>pendente</u> <u>lite</u> child support at the level set forth in the statutory guidelines. The trial court noted at that time that a deviation would have been appropriate due to the standard of living established during the marriage and the earning capacity and resources of Dr. Fox. <u>See</u> Code § 20-108.1(B)(10) and (11). On November 1, 1996, the trial court modified the child support award due to the financial hardship placed upon Ms. Fox and the parties' minor children as a result of Dr. Fox's continued refusal to pay spousal support. This modification conformed to the prior award and suspended payment of further spousal support.

In the final decree of divorce, the trial court held that Ms. Fox was entitled to spousal support, and reserved jurisdiction to make a future spousal support award. Pending award of spousal support, the trial court ordered Dr. Fox to pay $7,050 per month in child support. The trial court considered the statutory factors set forth in Code § 20-108.1(B), and concluded that application of the statutory guidelines would be "unjust and inappropriate" under the circumstances at that time.

We find no abuse of discretion, and affirm the determination of child support.

## IV. SPOUSAL SUPPORT

Dr. Fox contends that the trial court erred in setting the

<u>pendente</u> <u>lite</u> and permanent spousal support awards.  He argues that the awards are excessive.

The trial court considered the evidence and all of the statutory factors in fashioning the support awards.  Its findings are supported by the record.  <u>See</u> Code § 20-107.1.  We find no abuse of discretion, and affirm the awards.  <u>See</u> <u>Huger v. Huger</u>, 16 Va. App. 785, 791, 433 S.E.2d 255, 259 (1993).  <u>See also</u> <u>Thomasson v. Thomasson</u>, 225 Va. 394, 397 n.1, 302 S.E.2d 63, 65 n.1 (1983) (permitting trial court to reserve power to modify spousal support).

V.   CUSTODY AND VISITATION

Dr. Fox contends that the trial court erred in its custody and visitation determinations.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327–28, 387 S.E.2d 794, 795 (1990).  On review, "the 'decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record.'"  Sutherland v. Sutherland, 14 Va. App. 42, 44, 414 S.E.2d 617, 618 (1992) (citation omitted).

The trial court saw the parties and heard the evidence. Having reviewed the record, we find that it supports the decision to award Ms. Fox custody of the parties' children and to deny visitation to Dr. Fox.

Dr. Fox contends also that the trial court erred in entering child visitation orders without the notice to and endorsement by his counsel and the guardian ad litem.

> Rule 1:13 provides that:
> Drafts of orders and decrees shall be endorsed by counsel of record, or reasonable notice of the time and place of presenting such drafts together with copies thereof shall be served by delivering or mailing to all counsel of record who have not endorsed them. Compliance with this rule . . . may be modified or dispensed with by the court in its discretion.

(Emphasis added).

All counsel of record, including the guardian ad litem, were present at the trial. Counsel for Dr. Fox was not permitted to participate and the guardian ad litem declined the trial court's repeated offer to examine the witnesses. Counsel for Dr. Fox objected to his exclusion from participation and to the trial court's findings and rulings. At the conclusion of the trial, the trial court requested findings of facts and conclusions of law from Ms. Fox. Her counsel gave notice that the proposed findings and conclusions of law would be submitted forthwith. See State Hwy. Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974) (noting that rule designed to protect parties without notice).

"All that remained to be done was the preparation and entry of the [decree] to end the case in the trial court." Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 93 (1996). Ms. Fox's counsel sent a facsimile and mailed a copy of the proposed findings to all counsel of record. The trial court entered the final decree of divorce that same day. Following entry of the final decree, neither counsel for Dr. Fox nor the guardian ad litem requested an opportunity to endorse the final decree.

We hold that, under the circumstances of this case, the trial court did not abuse its discretion in dispensing with the requirement that the final decree be endorsed by all counsel of record. Compare Smith v. Stanaway, 242 Va. 286, 289, 410 S.E.2d

- 14 -

610, 612 (1991), with Cofer v. Cofer, 205 Va. 834, 836, 140 S.E.2d 663, 665 (1965) (reversing order entered without notice that adversely affected rights of infants).

### VI. MONETARY AWARD OF MARITAL ASSETS

Dr. Fox contends that the trial court abused its discretion in the determination and award of marital assets. Despite having presented us with a question on appeal, Dr. Fox has advanced no argument thereon. We will not construct an argument for him. Accordingly, we do not address this question. See Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988).

### VII. JURISDICTION OVER NON-PARTIES

Dr. Fox contends that the trial court erred in exercising subject matter jurisdiction over certain trusts established for the parties' children and over various other entities.

> [T]he court, upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties . . . .

Code § 20-107.3.

> Virginia's statute "mandates" that trial courts determine the ownership and value of all real and personal property of the parties. But, consistent with established Virginia jurisprudence, the litigants have the burden to present evidence sufficient for the court to discharge its duty.
>
>      *    *    *    *    *    *    *
>
> Adequate discovery techniques are available to the parties to enable them to obtain evidence to identify, classify or evaluate marital or separate property. The court has available and should exercise adequate

sanctions to deal with the reluctant or recalcitrant party or witness who fails or refuses to disclose relevant evidence.

Bowers v. Bowers, 4 Va. App. 610, 617-18, 359 S.E.2d 546, 550-51 (1987) (citation omitted).

While Dr. Fox argues that the trial court lacked subject matter jurisdiction to identify and value assets held by him and by the parties' children, he provides us no authority for that proposition. Nor does he argue that the non-parties objected to participation. Because of Dr. Fox's obstreperous conduct in refusing to comply with discovery orders, the trial court properly sought the direct assistance of non-parties to enable it to discharge its duties under the statute.

Dr. Fox also appears to contend that the trial court erred in finding that various entities were, in fact, his alter egos. He advances no argument to support this contention, and we will construct none for him on appeal.

However, we note that:
"[W]hen a corporation will be regarded as the adjunct, creature, instrumentality, device, stooge, or dummy of another corporation is usually held to be a question of fact in each case. * * *; and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other."

    *     *     *     *     *     *     *

"Notwithstanding, when the facts justify it, the courts will look beyond the mere corporate entity to the persons who compose the corporation."

- 16 -

Lewis Trucking Corp. v. Commonwealth, 207 Va. 23, 31-32, 147 S.E.2d 747, 753 (1966) (citations omitted).

The trial court found that Dr. Fox "embarked upon a scheme to defraud both [Ms. Fox] and the taxpayers of this jurisdiction through the use of a series of limited partnerships, trusts and corporations which in reality are simply an attempt by [Dr. Fox] to fraudulently hide marital assets and prevent their proper distribution."  The record supports the trial court's determination that the various entities and Dr. Fox shared a unity of interest and ownership, such that their separate personalities no longer existed.  See 18 Am. Jur. 2d Corporations § 45.  See also 62B Am. Jur. 2d Process § 284 (noting the exception to the general rule that a corporation is subject to service of process where the corporation served is the alter ego of the defendant).

We affirm the trial court.

### VIII.  AWARD OF ATTORNEYS' FEES AND COSTS

Dr. Fox contends that the trial court abused its discretion in the award of attorneys' fees and costs.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).

On April 30, 1997, the trial court entered judgment against Dr. Fox for Ms. Fox's attorneys' fees and costs in the amount of

$203,260.77.  The trial court found that:

> [B]ecause of [Dr. Fox's] extreme behavior and
> continuing direct contempt of the Court's
> orders, and [Dr. Fox's] nearly complete lack
> of cooperation in providing discovery,
> including his intentional and actual efforts
> to impede discovery, [Ms. Fox] has been
> required to expend extraordinary and
> excessive amounts of money on attorneys' fees
> and costs . . . ."

Under the circumstances, the award was appropriate.  We find no abuse of discretion.

### IX.  WRIT OF NE EXEAT

Dr. Fox contends that the evidence does not support a finding that he was in Virginia when the trial court entered and subsequently amended the writ of ne exeat.  He argues that the writ cannot restrain the departure of one who has already left.

> A writ of ne exeat:
> [F]orbids the person to whom it is addressed
> to leave the country, the state, or the
> jurisdiction of the court.  Available in some
> cases to keep a defendant within the reach of
> the court's process, where the ends of
> justice would be frustrated if he should
> escape from the jurisdiction.

Black's Law Dictionary 929 (5th ed. 1979).  The writ is a proceeding in equity to secure bail.  It may not be granted unless:  (1) a debt for a sum certain is due; (2) it is an equitable demand without recourse at law, except as "in account, and some other cases of concurrent jurisdiction"; and (3) the person to whom the writ is addressed is about to "quit[] the Country."  Rhodes v. Cousins, 27 Va. (6 Rand.) 657, 659 (1828).

- 18 -

Ms. Fox sought the writ and submitted an affidavit incorporating by reference the statements in her petition. She averred that Dr. Fox had not paid certain child and spousal support obligations and that the parties' children's trust account funds ($341,253.90) had been removed in contravention of a prior order. She also averred that she believed that Dr. Fox was preparing to relocate to the Bahamas. She testified as to the basis for that belief.

After a hearing on the petition, the trial court entered the writ, directing the sheriff to restrain Dr. Fox's departure from Virginia, with bail set at $400,000. In the final decree, the trial court increased the amount of bail to $1,000,000.

The evidence, viewed in the light most favorable to Ms. Fox, supported the finding that Dr. Fox was preparing to leave the United States permanently. However, the record does not reflect that at the time the trial court issued the writ, Dr. Fox was present in Virginia.

Because of its potential to restrict a person's liberty, the writ of ne exeat merits close judicial scrutiny. Execution of the writ is akin to a prohibitory injunction. It restrains the departure of a person from the jurisdiction of the court so as to prevent irreparable harm. Here, the writ sought to secure performance of the trial court's decrees and to ensure that Dr. Fox would provide for his former wife and their minor children.

The circumstances in this case support the trial court's

amendment of the writ in the final decree of divorce.  Dr. Fox alleges no prejudice.  At no time has he been forced to give bail to secure his liberty.  He has not moved the trial court to quash the writ.  The amendment serves merely to balance the equities and to offer Ms. Fox and the parties' children a mechanism by which they may seek to bar Dr. Fox's escape from Virginia upon a subsequent return.  We find no abuse of discretion in increasing the amount of bail.

### X.  <u>MOTION TO RECUSE</u>

Dr. Fox contends that the trial judge erred in declining to recuse himself.  We disagree.

While stating that Dr. Fox had very low credibility, the trial court told Dr Fox's counsel that:

> Every time he comes into this courtroom . . .
> as far as I'm concerned, Dr. Fox starts off
> with a clean slate, but everything that I
> have seen about Dr. Fox at this point is
> totally unworthy of belief.

In discussing experts, the trial court stated:

> Well, Dr. Fox can hire anyone that he wants.
> And I will give due consideration to the
> credentials and testimony of any expert that
> he brings in here.
>     I will not -- I will not prejudge
> anyone, but I do reserve the right to call
> them as I see them after I hear their
> credentials and after I hear them testify.

"It is within the trial judge's discretion to determine whether he harbors bias or prejudice which will impair his ability to give the defendant a fair trial."  <u>Terrell v. Commonwealth</u>, 12 Va. App. 285, 293, 403 S.E.2d 387, 391 (1991)

- 20 -

(citation omitted).  Having reviewed the record, we cannot say that the trial judge abused his discretion in declining to recuse himself.

<u>Affirmed.</u>
