**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KEVIN R. HUENNEKENS,
          *Trustee-Appellant,*

v.

PATRYK RECZEK; EDWARD T. GILLER,
          *Defendants-Appellees,*

          and

JILL EDNEY,
          *Defendant.*

No. 01-1324

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-00-380, BK-98-03061, AP-97-35052-T)

Argued: June 5, 2002

Decided: August 5, 2002

Before TRAXLER and KING, Circuit Judges,* and Bobby R.
BALDOCK, Senior Circuit Judge of the United States Court of
Appeals for the Tenth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

*This appeal was initially assigned to a panel consisting of Judge
Traxler, Judge King, and Judge Bobby R. Baldock, Senior United States
Circuit Judge for the Tenth Circuit. Due to a scheduling conflict, Senior
Judge Baldock was unable to hear and participate in oral argument. By
consent of the parties this appeal was heard and determined by a quorum
of the assigned panel. *See* 28 U.S.C. § 46(c) & (d).

## COUNSEL

**ARGUED:** Lynn Lewis Tavenner, TAVENNER & BERAN, P.L.C., Richmond, Virginia, for Appellant. Michael Joseph Champlin, BOWEN, BRYANT, CHAMPLIN & CARR, Richmond, Virginia; Joel S. Aronson, RIDBERG, PRESS & SHERBILL, L.L.P., Bethesda, Maryland, for Appellees. **ON BRIEF:** Paulo E. Franco, Jr., WRIGHT, ROBINSON, OSTHIMER & TATUM, Richmond, Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Kevin R. Huennekens, the bankruptcy trustee (the "Trustee") of debtor SunSport, Incorporated ("SunSport"), appeals the decision of the district court affirming an earlier decision of the bankruptcy court for the Eastern District of Virginia. *See Huennekens v. Reczek*, Memorandum Opinion, 3:00CV380 (E.D. Va. Feb. 7, 2001) (the "District Court Opinion"); *In re: SunSport, Inc.*, 97-35052-T (Bankr. E.D. Va. Apr. 1, 2000) (the "Bankruptcy Opinion"). The Trustee maintains that two errors warrant reversal. First, he asserts that the district court erred in failing to hold an individual shareholder personally liable for corporate obligations. Second, he contends that a default judgment entered against one of SunSport's shareholders was erroneously modified. As explained below, these contentions lack merit, and we affirm.

I.

A.

In 1994, Peter Mills, Sandra Mills, and Patryk Reczek established a company called UltraBronz USA, Inc. ("UltraBronz"). In 1995, UltraBronz became the exclusive distributor in this country of high-pressure tanning beds manufactured by Barclay Leisure.[1] UltraBronz sold and marketed the Barclay Leisure tanning beds under an Ultra-Bronz label. While it was initially successful, UltraBronz's business prospects deteriorated by the end of 1996, due largely to the fact that it was seeking to develop its own high-pressure tanning bed. In response to the business decline and to UltraBronz's increasing financial problems, Mr. and Ms. Mills, in July 1996, founded SunSport. UltraBronz then transferred its development work on the high-pressure tanning bed to SunSport, and SunSport began shipping prototypes of the bed to its customers and distributors in late 1996.[2] By January 1997, UltraBronz had transferred all of its assets to SunSport, and the principal officers and directors of SunSport were the same as the UltraBronz management.

SunSport soon began experiencing its own financial difficulties. A significant part of these problems was that Barclay Leisure initiated trade dress litigation against SunSport, arising out of its alleged copying of the Barclay Leisure tanning bed. In light of these developments, Mr. Mills and Reczek decided that SunSport required outside investment. In early 1997, SunSport entered into negotiations with Edward T. Giller, a distributor of tanning beds for UltraBronz and SunSport, and Giller ultimately agreed to invest $300,000. Giller, Mr. Mills, and Reczek agreed among themselves that Giller's $300,000 investment in SunSport would be accomplished by capitalizing a shell corporation called Gilcom with Giller's money, and by Gilcom then

---

[1]A high-pressure tanning bed utilizes quartz lamps, rather than the flourescent tubular lamps used by conventional tanning beds. The quartz lamps purportedly decrease the length of time necessary for a successful tanning process.

[2]The prototypes of the SunSport high-pressure tanning bed closely resembled, in both appearance and technology, the Barclay Leisure tanning bed.

purchasing SunSport's assets for that sum. The sale of SunSport's assets to Gilcom was consummated on March 7 and 8, 1997. SunSport's assets were valued at $327,125, and in purchasing these assets Gilcom paid SunSport $240,120 in cash, plus other consideration. On completion of the transaction, Mr. and Ms. Mills, along with Reczek, collectively became fifty percent shareholders of Gilcom, with Giller owning the remaining shares of Gilcom.

Despite the sale of its assets to Gilcom in March 1997, SunSport operated as one of Gilcom's distributors until the beginning of July 1997. During this period, Giller, Mr. Mills, and Reczek actively concealed Gilcom's purchase of SunSport's assets from customers and vendors who had favorable relationships with SunSport. At the same time, however, they concealed the Gilcom involvement of Mr. Mills and Reczek from customers and vendors who had negative reactions to SunSport. This marketplace confusion was exacerbated by Gilcom's continuing use of SunSport's phone numbers, internet site, distributor network, and employee base. Moreover, Gilcom decided to form a subsidiary, Simply Tan USA, Inc. ("Simply Tan"), to take over its distribution business and pay some of SunSport's outstanding debts, further obfuscating the relationship between SunSport and Gilcom.

In July 1997, both SunSport and UltraBronz filed for bankruptcy in the Eastern District of Virginia and, in December 1997, the bankruptcy court ordered consolidation of the two cases. At that time, the court appointed Kevin R. Huennekens as Trustee in the consolidated case. Mr. and Ms. Mills, however, refused to cooperate with the Trustee. In particular, they declined to provide the Trustee with important records relating to SunSport, including accounting records from the debtor's computers. In fact, Mr. and Ms. Mills failed to provide the Trustee with accurate business records; instead, they misled the Trustee with re-created books and accounts that could not be reconciled. Mr. Mills also did not disclose to the Trustee the March 1997 purchase of SunSport's assets by Gilcom, and the Trustee did not learn of the Gilcom asset purchase until September 1997. Finally, after the bankruptcy filings, Giller continued to negotiate checks pay-

able to SunSport, thereby interfering with the Trustee's management of SunSport's affairs.[3]

### B.

On May 26, 1998, the Trustee filed a twenty-two count adversary proceeding (the "Complaint") in bankruptcy court against, inter alia, Gilcom, Simply Tan, Giller, Reczek, and Mr. and Ms. Mills. In relevant part, the Complaint alleged that Gilcom and Simply Tan were alter ego corporations of SunSport and that the unity of ownership and control between the individual and corporate defendants required that the corporate forms be disregarded. Specifically, the Complaint maintained that Giller and Reczek, along with Mr. and Ms. Mills, should be held personally and individually liable for SunSport's obligations.

Prior to the trial of this adversary proceeding, the Trustee reached a settlement with Mr. and Ms. Mills, which the bankruptcy court approved. The claims against Mr. and Ms. Mills were accordingly dismissed, and the claims against Giller and Reczek proceeded to trial on July 14, 1999. Reczek, however, had failed to comply with a court order requiring responses to interrogatories, and he also failed to attend or participate in the trial. As a result, prior to issuing the Bankruptcy Opinion, the court, on July 20, 1999, entered a default judgment against Reczek in the sum of $4,283,023.59. Reczek then moved the court to reconsider and vacate the judgment. In November 1999, the court denied his motion, but it took under advisement the amount of the judgment.

In April 2000, the bankruptcy court issued its Bankruptcy Opinion concluding, inter alia, that Gilcom and Simply Tan were alter ego corporations of each other and of SunSport, and that they "should be held jointly liable for SunSport's debts." Bankruptcy Opinion at 23. The Opinion further concluded that "the evidence for veil piercing is just not sufficient to hold Giller . . . personally liable for Gilcom or Sim-

---

[3]Giller personally negotiated at least two checks payable to SunSport, and he deposited the funds in Gilcom's bank account. Giller endorsed the checks "PAY TO GILCOM CORP. OF VA., SUCCESSOR TO SUNSPORT, INC. BY EDWARD GILLER." *See* Bankruptcy Opinion at 15.

ply Tan's debt to SunSport."[4] *Id.* at 27. Finally, the court reduced the default judgment against Reczek to the sum which the Trustee had expended in "attorneys fees and costs in opposing Reczek's motion to vacate the default judgment." *Id.* at 53.

Thereafter, on April 10, 2000, the Trustee appealed to the district court two aspects of the Bankruptcy Opinion. First, he contested the Bankruptcy Opinion's ruling against imposing personal liability on Giller for Gilcom's or Simply Tan's obligations to SunSport and, second, he contested the modification of the default judgment against Reczek. After considering the Trustee's contentions, the district court on February 7, 2001, affirmed the bankruptcy court on both issues. *See* District Court Opinion. The Trustee filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 158(d).

## II.

We review de novo a district court's examination of a bankruptcy court's decision, utilizing the same standard of review applied by the district court. *In re: Shangra-La, Inc.*, 167 F.3d 843, 847 (4th Cir. 1999). Thus, we review findings of fact for clear error and conclusions of law de novo. *In re: Bulldog Trucking, Inc.*, 147 F.3d 347, 351 (4th Cir. 1998). On the other hand, we review for abuse of discretion a decision to reconsider and modify a default judgment. *Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503-04 (4th Cir. 1985).

## III.

In his appeal, the Trustee seeks reversal of the district court on two points. First, he contends that the court erred by refusing to hold Giller, an individual shareholder, personally liable for the corporate obligations of Gilcom or Simply Tan to SunSport. Second, he con-

---

[4]Because, as the bankruptcy court found, Gilcom, Simply Tan, and SunSport are alter egos of one another, the idea that one of the three corporations was indebted to one of the others is a fiction. Although the bankruptcy court characterized its inquiry as whether Giller could be held liable for Gilcom's or Simply Tan's debts to SunSport, it appears to have been analyzing whether Giller was an alter ego of the entity it recognized as these three corporations.

tends that the bankruptcy court abused its discretion in modifying the default judgment against Reczek.

## A.

The Supreme Court of Virginia has made clear that the imposition of liability on individual shareholders for the financial obligations of their corporation is an extraordinary event. *O'Hazza v. Executive Credit Corp.*, 431 S.E.2d 318, 320 (Va. 1993) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E.2d 828, 831 (Va. 1987)) ("Ignoring the separate existence of a corporation and imposing personal liability on shareholders for debts of the corporation is an extraordinary act to be taken 'only when necessary to promote justice.'"). Indeed, a party "seek[ing] to disregard the corporate entity must show that the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Id.* (citing *Lewis Trucking Corp. v. Commonwealth*, 147 S.E.2d 747, 753 (Va. 1966)). Moreover, a court ruling which pierces the corporate veil, and which subjects an individual shareholder to personal liability for corporate obligations, is only "justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist." *Id.* at 320-21 (citing *Lewis Trucking*, 147 S.E.2d at 753-54).

Of course, any issue that involves the piercing of a corporate veil "is *sui generis*," that is, it requires "examination of the particular factual circumstances surrounding the corporation and actions in question." *Id.* at 321. And, of course, any issues concerning such claims are unquestionably factual, and they are "within the province of the trial court." *Id.* (internal citations omitted). In this case, the bankruptcy court found the evidence to be insufficient to hold Giller personally liable for the obligations of Gilcom or Simply Tan to SunSport. Bankruptcy Opinion at 27. As the court found, the Trustee failed to present evidence sufficient to demonstrate that Giller had commingled his personal assets with the assets of Gilcom, that he had otherwise disregarded the corporate form, or that he had used Gilcom's resources to meet his personal obligations. *Id.* at 28 ("[I]t has not been shown that Giller . . . treated the assets of Gilcom as [his] own, commingled personal and corporate accounts, or that [he] disre-

garded corporate formalities to such a degree that the corporate form ought to be ignored.").

Under the scenario presented here, the finding of the bankruptcy court that "the evidence for veil piercing is just not sufficient to hold Giller . . . personally liable for Gilcom or Simply Tan's debt to Sun-Sport," *id.* at 27, is supported by the evidence, and it is consistent with the applicable legal principles. As such, we agree with the district court that the decision of the bankruptcy court on this question should not be disturbed.

### B.

In a bankruptcy proceeding, Rule 9024 of the Federal Rules of Bankruptcy Procedure governs any effort to obtain relief from a default judgment. Rule 9024, in turn, makes Rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings.[5] And, in this circuit, a party seeking relief under Rule 60(b) must make a threshold showing of "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (internal citations and quotations omitted). If this threshold showing is made, the party must also satisfy one of the six enumerated sub-sections of Rule 60(b) — (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) void judgment; (5) satisfied judgment; or (6) any other reason justifying relief. Significantly, any doubt as to whether a court should grant relief under Rule 60(b) is resolved in favor of the moving party. *Augusta Fiberglass Coating, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811-12 (4th Cir. 1988).

In this case, as the district court acknowledged, the bankruptcy court failed to specifically utilize the analytical framework developed by our Court for assessing whether to award Rule 60(b) relief. *See*

---

[5]Rule 9024 provides, in relevant part, that "Rule 60 F.R.Civ.P. applies in cases under the Code." Rule 60(b) empowers a court "upon such terms as are just, . . . [to] relieve a party . . . from a final judgment [for] . . . excusable neglect; . . . or any other reason justifying relief from the operation of the judgment."

District Court Opinion at 11. Nonetheless, the district court did not err in affirming the bankruptcy court's modification of the default judgment against Reczek. The bankruptcy court's findings of fact, when carefully examined, satisfy our standard, from a substantive standpoint, for an award of Rule 60(b) relief. Indeed, the court found that the interests of justice required modification of the default judgment. If the judgment had been permitted to stand, Reczek would have been the only individual shareholder of SunSport facing personal liability for its corporate obligations. Bankruptcy Opinion at 52; *see also Augusta Fiberglass*, 843 F.2d at 812. Because the bankruptcy court's findings are sufficient to satisfy the requirements for Rule 60(b) relief, the district court did not err in affirming the modification of the default judgment.

## IV.

Pursuant to the foregoing, we affirm the decision of the district court.

*AFFIRMED*